Robert Littles *vs.* Commissioner of Correction
& others[1]
(and a companion case[2]).

Suffolk. April 7, 2005. - August 12, 2005.

Present: Marshall, C.J., Ireland, Spina, Cowin, & Sosman, JJ.

*Commissioner of Correction. Imprisonment,* Segregated confinement. *Constitutional Law,* Cruel and unusual punishment, Imprisonment. *Practice, Civil,* Summary judgment, Appeal, Dismissal of appeal, Interlocutory appeal, Reconsideration. *Civil Rights,* Immunity of public official. *Governmental Immunity.*

This court dismissed the appeal of the defendants (the Commissioner of Correction and certain other current and former correctional institution officials) from the denial of their "renewed motion" for summary judgment, where the fact that the order denying the defendants' first motion for summary judgment did not explicitly address their defense of qualified immunity did not excuse their failure to appeal, in that the wholesale denial of relief in that order implicitly encompassed rejection of that defense [874-876], and where the defendants' failure timely to appeal extinguished their interlocutory appellate rights on the issue of qualified immunity, and the "renewed motion," which the judge properly treated as a motion for reconsideration, set forth no new facts or law to support it [876-880].

Civil actions commenced in the Superior Court Department on July 27, 1995, and February 13, 1996, respectively.

After consolidation, the case was heard by *Janet L. Sanders,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joel J. Berner* for the defendants.

*Ronald J. Snyder* for the plaintiffs.

Cowin, J. The plaintiffs, Robert Littles and Kevin Kempt, each filed a civil rights complaint, which were consolidated in

[1]The former Commissioner of Correction and the former superintendents of the Massachusetts Correctional Institutions at Norfolk, Shirley, Cedar Junction, and Concord.

[2]Kevin Kempt *vs.* Commissioner of Correction & others.

the Superior Court, against the commissioner of correction and other prison officials. The plaintiffs sought damages pursuant to 42 U.S.C. § 1983 (2000), alleging violation of their Federal and State constitutional rights to due process of law, as well as violation of art. 26 of the Massachusetts Declaration of Rights (cruel or unusual punishment), with respect to the conditions and duration of their confinement in administrative segregation.[3] Essentially, the plaintiffs claim that their constitutional rights to due process were violated by their confinement in administrative segregation for almost twenty-two months, in "conditions similar to disciplinary segregation and isolation, without periodic review, and despite the completion of the internal investigation" into a prison murder in which they were the primary suspects.

In July, 1997, almost two years after the complaints were filed, the defendants filed a joint motion to dismiss or, in the alternative, for summary judgment. In their motion, the defendants argued not only that there had been no constitutional violation and that the time the plaintiffs spent in administrative segregation was not unreasonable, but also that they were entitled to qualified immunity from civil liability with respect to the plaintiffs' claims for damages under 42 U.S.C. § 1983 and the Massachusetts Declaration of Rights. A judge in the Superior Court (first judge) treated the motion as a motion for summary judgment, concluded that there were material factual disputes whether the Department of Correction (department) followed its own regulations in regard to the administrative segregations and whether department investigators properly handled the physical evidence that allegedly implicated the plaintiffs in the murder, and denied the motion in March, 1998. Although the judge did not address specifically the qualified immunity issue, the defendants neither appealed from nor sought reconsideration of his order.

In October, 1998, the cases were stayed at the plaintiffs' request. The docket reflects no further activity for three years. Eventually, in October, 2001, after a status hearing, the cases

---

[3]Robert Littles's additional request for injunctive relief has been rendered moot due to his return to the general population at the Massachusetts Correctional Institution at Cedar Junction.

were dismissed for lack of prosecution. The plaintiffs moved successfully to vacate the judgment of dismissal, and in March, 2002, the cases were restored to the docket and assigned for trial in July, 2002. In June, 2002, three months after the cases were restored to the docket and one month prior to the scheduled trial date, the defendants moved to reschedule trial to begin after September 1, 2002. The motion was allowed, and the docket indicates that trial was to commence on September 30, 2002.

On September 23, 2002, one week before trial was to begin, almost four and one-half years after the defendants' original motion to dismiss or for summary judgment was denied, and six months after the cases were set for trial, the defendants filed a "renewed motion to dismiss or, alternatively, for summary judgment." As they had in their original motion, the defendants claimed they were entitled to summary judgment on their qualified immunity defense to the due process claims, and to summary judgment with respect to the plaintiffs' cruel or unusual punishment claims.[4]

On May 21, 2003, a different Superior Court judge (second judge) denied the motion, stating that it was an attempt to "delay trial rather than to save defendants from the burden of discovery." The defendants filed an interlocutory appeal in the Appeals Court from the denial of their "renewed motion for summary judgment," and we transferred the case to this court on our own motion.[5] In the circumstances of this case, the "renewed motion" is essentially a motion for reconsideration based on the proposition that the law had changed. We conclude that the defendants waived their pretrial qualified immunity claims by failing to appeal timely from the denial of these claims in their original summary judgment motion.

*Factual background.* The plaintiffs, both of whom are inmates serving life sentences for murder in the second degree, were

---

[4]The cruel or unusual punishment claims were brought pursuant to art. 26 of the Massachusetts Declaration of Rights, rather than the Eighth Amendment to the United States Constitution.

[5]The defendants' notice of appeal states that they appealed from the denial of their "renewed motion," as well as from the second judge's denial of a subsequent motion for reconsideration. Because they do not raise any issues with respect to the latter motion, we do not separately address it.

housed at the Massachusetts Correctional Institution at Cedar Junction (Cedar Junction) on October 20, 1993, when inmate Curtis Johnson was fatally stabbed. The State police were summoned, and officers recovered blood samples, a black sweatshirt, a latex glove, a pick-type weapon, and an unopened can of tomato sauce with hairs stuck to it. Department investigators subsequently obtained a white towel, blue face cloth, and off-white underwear from Littles's cell; an off-white T-shirt from another cell; and clothing and sheets from a third cell. This evidence was submitted to the State police crime laboratory on October 26, 1993.

Interviews conducted with the seventy-one other inmates housed in the same unit as the plaintiffs and the victim, and information from four confidential informants, prompted prison officials to suspect Kempt, Littles, and a third prisoner, and to segregate them pending further investigation. All three were placed in administrative segregation on awaiting action pending investigation (AA/PI) status and, to prevent them from interfering with the investigation process, transferred to other correctional institutions on October 21, 1993.[6]

Lieutenant Robert McGuiness, Cedar Junction's investigative "liaison with outside law enforcement," in "serious matters such as homicide," "periodically followed-up on the status of the evidence analysis" with the State police. According to his deposition testimony, "[a]fter January, 1994," he was informed that the evidence had been mislabeled (as a nonfatal stabbing) by the crime laboratory. Finally, the crime laboratory returned the evidence to the department with inconclusive findings. Given this result and the fact that McGuiness had not located any eyewitnesses who would testify, he advised Cedar Junction's superintendent in June, 1995, that Kempt and Littles could no longer impede the investigation. Kempt was released from AA/PI status and returned to Cedar Junction on July 27, 1995; Littles was released from AA/PI status and returned to Cedar Junction on August 2, 1995.

*Discussion.* Our analysis begins and ends with the procedural status of the case created by the defendants' failure to exercise

---

[6]The third suspect completed his sentence on June 1, 1994, was discharged on that date, and is not a party to this appeal.

their appellate rights following the denial of their first motion for summary judgment. Because no appeal was filed from the denial of that motion, and because the "renewed motion," in the words of the second Superior Court judge, contained "no new facts or law to support it," this appeal must be dismissed. There is no basis on which to conclude that the failure promptly to exercise appellate rights may be remedied by "renewing" a motion on which the right to appeal has expired. See *Peterson* v. *Hopson*, 306 Mass. 597, 599 (1940) ("A question of law not seasonably and properly saved, cannot be revived by the simple expedient of bringing it forward again, demanding a second ruling, and claiming an exception or appeal from that second ruling").

Logic simply does not support the proposition that appellate rights once lost may be revived through the expedient of "renewing" a motion. As we explain below, there is no basis for an exception for a motion that raises a defense of qualified immunity.

a. *Interlocutory appeals from qualified immunity rulings.* The doctrine of qualified immunity generally shields public officials from liability for civil damages for the performance of discretionary functions, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clancy* v. *McCabe*, 441 Mass. 311, 317 (2004), quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). That right is complemented by an accompanying "entitlement not to be forced to litigate the consequences of official conduct." *Mitchell* v. *Forsyth*, 472 U.S. 511, 527 (1985). This latter component, characterized as "immunity from suit," is the impetus behind interlocutory appeals from the denial of immunity. See *Duarte* v. *Healy*, 405 Mass. 43, 46 (1989); *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26, 31 (1987), cert. denied sub nom. *Forastiere* v. *Breault*, 485 U.S. 906 (1988). While that policy is important, informed as it is by the recognition that the distractions involved in discovery and trial may disrupt the effectiveness of government functions, *Behrens* v. *Pelletier*, 516 U.S. 299, 308 (1996), the right to interlocutory appeal, like other appellate rights, may be lost if not exercised in accordance

with applicable rules. Indeed, the "immunity from suit" aspects of qualified immunity are largely empty when raised close to trial, after the associated pretrial burdens already have been shouldered by the parties. See *Zayas-Green* v. *Casaine*, 906 F.2d 18, 22-24 (1st Cir. 1990).

The pivotal question in this case is whether the first Superior Court judge's order denying summary judgment was immediately appealable, because his decision did not explicitly address the qualified immunity defense raised by the defendants. We conclude that his wholesale denial of relief implicitly encompassed rejection of that defense. As the United States Court of Appeals for the Third Circuit noted in similar circumstances:

> "Although the [lower court] did not expressly address the Appellants' immunity claims, it denied the motions for summary judgment in which those claims were asserted. We hold that this implicit denial of the Appellants' immunity claims is sufficient to confer appellate jurisdiction."

*In re Montgomery County*, 215 F.3d 367, 370 (3d Cir. 2000), cert. denied sub nom. *Montgomery County* v. *Wright*, 531 U.S. 1126 (2001). Accord *Volin* v. *Board of Pub. Accountancy*, 422 Mass. 175, 182 n.6 (1996) (judge's failure to address second motion filed before decision on first constituted implicit denial); *Boutiette* v. *Dickinson*, 54 Mass. App. Ct. 817, 818-819 (2002) (where judge did not address principal argument in opposition to motion to dismiss, Appeals Court treated it as rejection of argument). See also *Behrens* v. *Pelletier, supra* at 303 (appeal from implicit denial of qualified immunity defense regarding remaining claim).

The first judge's failure to discuss the defendants' qualified immunity defense did not excuse the failure of the defendants to appeal with respect to the implicit rejection of the defense. Certainly, if they harbored any doubt, they could have, but did not, seek either clarification or reconsideration on that basis within the prescribed period. See Rule 9D of the Rules of the Superior Court (2005).

b. *Effect of defendants' failure immediately to appeal.* Given that the first summary judgment ruling was appealable, the question then becomes whether the defendants' failure timely to

appeal extinguished their interlocutory appellate rights on the issue. The right to interlocutory appeal from qualified immunity rulings, like other appellate rights, may be lost if not promptly exercised. "The quid pro quo is obvious: in exchange for the defendant's right to interrupt the judicial process, the court may expect a reasonable modicum of diligence in the exercise of that right." *Kennedy* v. *Cleveland*, 797 F.2d 297, 301 (6th Cir. 1986), cert. denied sub nom. *Hanton* v. *Kennedy*, 479 U.S. 1103 (1987). In other words, qualified immunity orders should not be treated differently from other appealable orders or judgments.

> "[O]nce it is determined that a given order is appealable under law, we see no good reason for not imposing the same temporal limitations that are applicable generally to the perfection of appeals. Thus, if the order is appealable at all, it must be appealed within the time set by law, here thirty days, or the right must be considered to have been waived."

*Id.* Other Federal courts are in accord. In *Fisichelli* v. *Methuen*, 884 F.2d 17, 18 (1st Cir. 1989), for example, the United States Court of Appeals for the First Circuit concluded that while the denial of a substantial claim of qualified immunity is immediately appealable, such appeals must be made within the thirty-day period prescribed by Fed. R. A. P. 4(a)(1). The United States Court of Appeals for the Fifth Circuit, relying on the *Fisichelli* case, came to the same conclusion. *Phillips* v. *Montgomery County*, 24 F.3d 736, 738 (5th Cir. 1994) (defendants "cannot fail to appeal [rejection of an immunity defense] and then restart the appellate [thirty-day] day clock by refiling substantially the same motion"). See *Weir* v. *Propst*, 915 F.2d 283, 286 (7th Cir. 1990) (rule 4 [a] deadline for appeals in civil cases applies to "all appealable orders, including collateral orders, specifically orders denying immunity"). The *Weir* court explained, "If the deadline is missed, the order is not appealable. The defendant must then wait until another appealable order (normally, the final judgment) is entered, upon appeal of which he can challenge any interlocutory order that has not become moot." *Id.* See *Armstrong* v. *Texas State Bd. of Barber Examiners*, 30 F.3d 643, 644 (5th Cir. 1994) (where summary judgment motion was functional equivalent of earlier motion to dismiss, appeal from denial of second motion was precluded by

failure to appeal from denial of first motion); *Taylor* v. *Carter*, 960 F.2d 763, 764 (8th Cir. 1992) (failure to appeal from denial of first motion for summary judgment precluded appeal from denial of second motion based on same legal grounds); *Kenyatta* v. *Moore*, 744 F.2d 1179, 1186-1187 (5th Cir. 1984), cert. denied, 471 U.S. 1066 (1985) (reiteration of absolute immunity defense in second motion for summary judgment did not give defendants second appellate opportunity). Cf. *Behrens* v. *Pelletier*, *supra* at 307 ("an order rejecting the defense of qualified immunity at either the dismissal stage or the summary judgment stage is a 'final' judgment subject to immediate appeal"). Cf. *Grant* v. *Pittsburgh*, 98 F.3d 116, 120-121 (3d Cir. 1996) (failure to appeal from denial of motion to dismiss on qualified immunity grounds did not preclude appeal from denial of subsequent motion for summary judgment, where motions were not "substantially the same").

Although the defendants characterized their second motion as a "renewed motion" for summary judgment, the second judge properly treated it as a motion for reconsideration of the first judge's ruling. As we long have held, if there is no material change in circumstances, a judge is not obliged to reconsider a case, issue, or question of law after it has been decided. *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 707 (1987), cert. denied, 485 U.S. 940 and 485 U.S. 962 (1988); *Peterson* v. *Hopson*, 306 Mass. 597, 599 (1940).

In an attempt to avoid the consequences of failing timely to seek reconsideration, see Rule 9D of the Rules of the Superior Court, or to appeal, see Mass. R. A. P. 4, as amended, 431 Mass. 1601 (2000), the defendants contend that the law had materially changed since they filed the first motion. In support of their argument, they rely primarily on two cases decided after their original motion: *Saucier* v. *Katz*, 533 U.S. 194 (2001), and *Gutierrez* v. *Massachusetts Bay Transp. Auth.*, 437 Mass. 396 (2002).

In *Saucier* v. *Katz*, *supra* at 202, the United States Supreme Court emphasized the importance of resolving qualified immunity issues promptly, and explained that the threshold question is whether a constitutional right has been violated; if so, the inquiry shifts to whether the right was so clearly established

that it would be plain to a reasonable official that his conduct was unlawful.

Without attempting to summarize the defendants' argument, we are not convinced that the *Saucier* case established relevant "new law." Even if there were relevant new law in that case, however, the second judge did not abuse her discretion in denying the motion. The *Saucier* case was decided in June, 2001, nine months before the cases were restored to the docket and set for trial, and fifteen months before the defendants filed their "renewed motion." To the extent that the defendants believed that the cases substantially affected the outcome of their motion, they failed promptly to seek reconsideration on that ground.

The *Gutierrez* case, though decided only seven weeks before the "renewed motion" was filed, does not establish relevant new law. In that case, citing *Saucier* v. *Katz*, *supra* at 200-202, we merely acknowledged that the threshold question in qualified immunity cases is whether a constitutional right has been violated, and reiterated the importance of deciding qualified immunity issues promptly, i.e., at the earliest stage of the litigation. *Gutierrez* v. *Massachusetts Bay Transp. Auth.*, *supra* at 403-404. In short, there is nothing to the defendants' contention that a change in circumstances justified their renewed motion. See *Piedra* v. *Mercy Hosp., Inc.*, 39 Mass. App. Ct. 184, 186-188 (1995) (no abuse of discretion in denying motion for reconsideration, where Superior Court judge could have concluded that plaintiff could have filed *timely* motion for reconsideration, rather than one almost five months late).

Finally, in her order denying the "renewed" motion for summary judgment, the second judge stated that the defendants' renewed motion "appear[ed] to be more of a strategic use of the qualified immunity defense, asserted to delay trial rather than to save [the] defendants from the burden of discovery." In the Federal courts, such conduct has been held to work a pretrial waiver of the defense. *Guzman-Rivera* v. *Rivera-Cruz*, 98 F.3d 664, 669 (1st Cir. 1996) (defense waived for pretrial purposes where not raised promptly, and no explanation for delay presented); *English* v. *Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994) (if defense not asserted within time limits set by court, or if defendant fails to exercise due diligence, trial court has discre-

tion to find waiver); *Zayas-Green* v. *Casaine*, 906 F.2d 18, 23 (1st Cir. 1990) (failure to file pretrial motion raising qualified immunity during period set for dispositive motions, and failure to appeal from final pretrial order, resulted in waiver of defense for pretrial purpose). Given the timing of the "renewed motion" in this case — just one week before trial — coupled with the lack of any supporting evidence or law that was not previously available, the motion was properly denied. To conclude otherwise would mean that a "defendant would receive not only his allotted bite at the apple, but an invitation to gnaw at will." *Fisichelli* v. *Methuen*, 884 F.2d 17, 19 (1st Cir. 1989).

*Conclusion.* To the extent that the defendants either believed that the first judge's decision was error at the time it was made, or they came to that conclusion following *Saucier* v. *Katz, supra*, they failed to act promptly. While we dismiss this appeal because the defendants did not timely appeal from the first judge's decision on their motion, we do not address the merits of the defendants' qualified immunity claims, which they remain free to raise on any appeal. See, e.g., *Fisichelli* v. *Methuen*, *supra* at 19 n.3 ("Defendants, of course, retain the right to challenge the district court's refusal to dismiss the damage claims on qualified immunity grounds, and any later rulings of a similar bent, in an end-of-case appeal from final judgment"); *Kurowski* v. *Krajewski*, 848 F.2d 767, 773 (7th Cir.), cert. denied, 488 U.S. 926 (1988).

*Appeal dismissed.*