Genesis Technical & Financial, Inc. *vs.* Cast Navigation, LLC, & others[1]; David A. Billings, third-party defendant.

No. 07-P-1653.

Suffolk. October 2, 2008. - May 6, 2009.

Present: Duffly, Brown, & Wolohojian, JJ.

*Practice, Civil,* Reconsideration. *Corporation,* Board of directors, Corporate opportunity. *Fiduciary. Trust,* Constructive trust.

A Superior Court judge who had denied an earlier motion for summary judgment was within her authority to reconsider and alter her prior decision. [206]

In a civil action alleging that the defendant corporation had defaulted on certain software licensing payments to the plaintiff corporation and seeking a judgment declaring that the plaintiff was the sole owner of all rights to the software and its licensing, the judge did not err in granting summary judgment in favor of the defendant, where the summary judgment materials established that the opportunity to acquire the rights to the software and its licensing belonged to the defendant; that the plaintiff, a corporation wholly owned and controlled by an officer and director of the defendant, had acquired the software rights through a beneficial arrangement that the director failed to affirmatively disclose to the defendant; and that therefore the plaintiff held in a constructive trust for the benefit of the defendant any interest in the software and license agreement. [209-212]

Civil action commenced in the Superior Court Department on June 26, 2002.

The case was heard by *Margot Botsford,* J., on a motion for summary judgment.

*Daniel K. Hampton* for the plaintiff.

*Mitchell H. Kaplan* for the defendants.

Duffly, J. We decide in this appeal from a summary judgment whether a corporate director has engaged in self-dealing such that the claimed interest in certain intellectual property is held in constructive trust. David A. Billings was an officer and

---

[1]John F. Blais, Jr., and BlaisCo, LLC.

director of Cast Navigation, LLC (Cast), when he was asked by Cast's board of directors to negotiate a deal that would allow Cast to purchase, at a steep discount, copyrighted software on which it relied and which it had been using under a licensing agreement with the software developer, Averstar, Inc. (Averstar). Billings reported that Averstar expressed accounting-related concerns; his recommendations regarding the structure of the deal were designed to address those concerns and were accepted by Cast. Essentially, the royalties due under the licensing agreement for the software, along with an option to purchase the software, would be assigned to Genesis Technical & Financial, Inc. (Genesis), a corporation wholly owned and controlled by Billings. The deal would be financed by BlaisCo, LLC (BlaisCo), a company owned by another officer and director of Cast, John F. Blais, Jr.[2]

Disputes between Billings and Blais arose from their involvement in other business ventures.[3] Billings resigned from Cast; Blais declared Genesis to be in default on the BlaisCo note; Billings demanded that Cast continue making payments to Genesis under the licensing agreement. Billings instituted a number of lawsuits, among them the instant action brought on behalf of Genesis by Billings against the defendants Cast, Blais, and BlaisCo.

Genesis essentially claims that Cast defaulted on its software licensing payments and seeks a declaration that Genesis is the sole owner of all rights to the software and its licensing.[4] The defendants counterclaimed; among other claims, they sought a

---

[2]The transaction documents reflect that Averstar assigned to Genesis its right to receive royalties from Cast and an option to purchase the software outright for a nominal sum. Genesis financed the purchase of the assignment through a $675,000 loan from Blais's company, BlaisCo. Genesis pledged its interest in the assignment to BlaisCo as security for, and agreed to pay interest and principal on, a $675,000 promissory note executed in favor of BlaisCo. Cast promised to pay to Genesis royalties due under the license agreement assigned to Genesis.

[3]At the time, Blais and Billings together controlled a consulting company, GTFM, LLC. Billings and Blais later had a falling out; Blais and others forced Billings out of GTFM, LLC, and transferred the business to another entity.

[4]In its nine-count complaint, Genesis asserts a breach of contract claim against Cast for failing to make royalty payments (count I), seeks an accounting from Cast (count II), raises a breach of contract claim against BlaisCo

declaration that Genesis holds all such rights in trust for the benefit of Cast.[5]

The defendants filed a motion for summary judgment. A Superior Court judge granted summary judgment in favor of Cast, ruling that Billings's fiduciary duty to Cast included a paramount duty of loyalty and that Billings, through his corporation Genesis, is not entitled to acquire the benefit of any software rights to the detriment of Cast. The judgment declares in essence that Genesis holds any rights to the software, including the right to receive related licensing fees, in a constructive trust for the benefit of Cast.[6] The judgment dismisses the remaining

(count III), and asserts a claim against BlaisCo for breach of the covenant of good faith and fair dealing (count IV). Genesis also seeks declarations including that Cast owes Genesis royalty payments; that the BlaisCo note is not in default and BlaisCo has no interest in the license; and that Genesis is sole owner of the license (count V). Genesis finally asserts claims of tortious interference with contract (count VI) and civil conspiracy (count VII) against Blais and BlaisCo; claims violation of G. L. c. 93A by BlaisCo (count VIII); and seeks injunctive relief against Cast, Blais, and BlaisCo (count IX).

[5]In addition to seeking this declaration under count I, the defendants' counterclaim seeks an alternative declaration that if Genesis does not hold the rights in trust for Cast, then BlaisCo is entitled to such rights (count II). The counterclaim also asserts, against Genesis, claims of abuse of process (count III) and violation of G. L. c. 93A (count IV); and against Billings, a third-party claim for breach of fiduciary duty (count V). The latter count duplicates the allegations set forth in a separately filed third-party complaint against Billings.

[6]As to count V of the complaint of Genesis, the judgment specifically declared as follows:

> "that plaintiff [Genesis] is not a party to or assignee of the [Cast/Averstar] [l]icense [a]greement . . . and has no rights or obligations under that agreement; that [Genesis] is not a party to the so-called License Purchase Agreement [by which Genesis would have purchased the license agreement outright] . . . , since this document was never executed by [Genesis] or any other party; that [Genesis] is a party to the Assignment of License Royalty Payments Agreement . . . but that [Genesis] holds in a constructive trust for the benefit of Cast any rights it has under this Agreement to receive royalty payments from Cast or to acquire the intellectual property of Averstar that is the subject of the Cast/Averstar license agreement . . . ; and that BlaisCo is not entitled to any further payments or other relief from [Genesis] under the . . . [p]romissory [n]ote . . . or the [accompanying] Pledge and Security Agreement . . . ."

Regarding count I of the counterclaim of the defendants, the judgment contained the following declaration:

> "[Genesis] holds in a constructive trust for the benefit of Cast any

claims, counterclaims, and third-party claim against Billings. Appealing, Genesis argues that issues of material fact exist which preclude summary judgment. We affirm.

*Discussion.* 1. *Reconsideration of ruling.* The summary judgment from which Genesis has appealed followed the second time that the Superior Court judge had considered a motion for summary judgment brought by the defendants. The judge denied the first motion on the ground that material issues of fact precluded summary judgment. Relying on *Littles* v. *Commissioner of Correction*, 444 Mass. 871, 878 (2005), Genesis argues that because the second motion did not present a change in circumstances or new evidence material to the outcome, the judge could not reconsider her earlier decision.

As the *Littles* court states, "[I]f there is no material change in circumstances, a judge is not obliged to reconsider a case, issue, or question of law after it has been decided." *Ibid.* That she was not "obliged" to reconsider the matter did not divest the judge of her broad discretion to do so. It is settled law that the power to reconsider an issue previously considered, whether by the same judge or another, "remains in the court until final judgment." *Riley* v. *Presnell*, 409 Mass. 239, 242 (1991), citing *Peterson* v. *Hopson*, 306 Mass. 597, 601 (1940). "The denial of a motion for summary judgment is not a final judgment or decree and thus the trial judge was within h[er] authority to reconsider and alter the prior decision." *Riley* v. *Presnell, supra.* See *Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.*, 438 Mass. 459, 465-466 (2003).

2. *Summary judgment.* a. *Standard of review.* "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as matter of law." *Kanamaru* v. *Holyoke Mut. Ins. Co.*, 72 Mass. App. Ct. 396, 398 (2008). Here, we view the facts in the light most favorable to the plaintiff, the nonmoving party against whom judgment entered. The moving party has the burden of affirmatively demonstrating that the pleadings raise no genuine

rights it may have under the Assignment of License Royalty Payments Agreement between [Genesis] and [Averstar] . . . to receive royalty payments from Cast or to acquire the intellectual property of Averstar that is the subject of the Cast/Averstar license agreement . . . ."

issue of fact on every material issue. *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371 (1982). If the moving party does show that there is no issue for trial, the opposing party must respond and allege specific facts showing that there is a genuine and triable issue or the court will allow the motion. *Baldwin* v. *Mortimer*, 403 Mass. 142, 143-144 (1988). Material facts are those that might affect the outcome of the suit under governing law. *Carey* v. *New England Organ Bank*, 446 Mass. 270, 278 (2006), citing *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

b. *Undisputed facts.* We expand upon the undisputed material facts, having in mind the foregoing principles. In 1999, a predecessor to Cast was owned by Averstar. The predecessor manufactured test equipment for navigational devices used primarily by the military. Averstar developed software and related equipment for testing navigational devices. Over the period from late 1999 to early 2000, Blais and others sought to purchase Cast's predecessor from Averstar and engaged Billings's consulting company, GTFM, LLC, see note 3, *supra*, to provide consulting and due diligence services. In about March, 2001, the new entity, Cast, was formed, which then went into the business of producing the test equipment. Blais was Cast's principal shareholder, owning seventy percent of Cast's stock. Billings and Blais, among others, became officers and directors of Cast. Necessary to Cast's business was the Averstar computer software technology which Cast agreed to license from Averstar. The amount of the license fee was set as a percentage of Cast's annual revenues for a period of years. Cast had the option of purchasing the software outright upon payment of both the license fee on $8 million in collections (a minimum of $1.1 million) and a $300,000 lump sum, or a total of $1.4 million.

Cast commenced operations in about April, 2000. During the second quarter of 2000, Averstar merged with Titan Corporation, a publicly traded company. Averstar/Titan[7] soon encountered financial difficulties and was in need of cash. Cast's board of directors, including Blais and Billings, met to discuss whether Averstar/Titan might be interested in selling its software to Cast outright at a steep discount. The board designated Billings to

---

[7] We use the term Averstar/Titan for convenience to refer to the entity formed by the merger.

enter into negotiations with Averstar/Titan. Based on those negotiations it appeared that Averstar/Titan was willing to sell the software to Cast at a considerable discount. Billings reported, however, that for accounting-related reasons, Averstar/Titan was concerned about selling the software to what amounted to a related entity.[8] Billings also expressed concern about possible bankruptcy. Accordingly, Billings recommended that the deal be structured essentially as follows:

> 1. Averstar/Titan would assign the rights to receive licensing fees for its software, along with an option to purchase the software outright at a specified time for nominal consideration,[9] to Genesis, a "shelf" corporation[10] wholly owned

---

[8]The parties do not dispute that Averstar/Titan's concerns about accounting, and an additional concern about the possible bankruptcy of Averstar/Titan, lay at the bottom of the structure ultimately agreed upon.

According to submissions filed by Genesis (none were filed by nonparty Averstar/Titan), Averstar/Titan was concerned that the sale of the software rights to Cast, a former subsidiary of Averstar — or to a shareholder of Cast (such as Blais, who held seventy percent of Cast's stock) — would appear to violate the pooling-of-interests method of accounting that had been used for the merger of Titan and Averstar. Genesis asserts that for the pooling-of-interests method of accounting to apply, one condition is that there be no deals involving the new entity that benefit insiders or former shareholders of the prior entities. In their brief, the defendants assert that the pooling-of-interests issue required only that the software rights not be sold by Averstar/Titan to Cast for two years.

We are not concerned that the statements relating any assertions that may have been made by representatives of Averstar/Titan are hearsay, see *Fortenbacher* v. *Commonwealth*, 72 Mass. App. Ct. 82, 88 (2008), or that the parties dispute the precise nature of any conditions that may have been imposed upon Averstar/Titan as a result of the merger. What the record must establish, through appropriate summary judgment materials, is what the directors of Cast were told on the subject.

[9]Although Genesis argues that there is a factual dispute over "whether or not [Genesis] purchased the License outright" from Averstar/Titan, this dispute is not material. The license purchase agreement was never signed, and Genesis agrees that the transaction was accomplished through the assignment. As the motion judge noted, "if the license purchase agreement had been executed . . . the assignment agreement would have been a nullity . . . ."

[10]So it was referred to by Billings. Because the record does not indicate that Genesis conducts any business or operations, it might be inferred that what was meant is that Genesis is a "shell" corporation. A shell corporation is a company that is incorporated but has no significant assets or operations; it is without independent economic value. See *Meyer* v. *Wagner*, 57 Mass. App. Ct. 494, 496 (2003) (equating "shell" corporations with "straws"); Black's

and controlled by Billings (who had no formal ties to Averstar/Titan);

2. Genesis would borrow the $675,000 needed to obtain those rights from BlaisCo, which was owned and controlled by Blais[11]; Genesis would immediately transfer the funds to Averstar/Titan in payment for the rights;

3. Genesis would execute and make payments on the promissory note to BlaisCo in return for the loan; Cast would license the software from Averstar/Titan and pay the licensing fees to Genesis.

Everybody involved, including Blais and Billings, understood that these various machinations were simply a means of structuring the deal in a manner to satisfy Averstar/Titan's reported accounting concerns,[12] and that Cast was the beneficiary of the transaction. Cast's board of directors approved the structure of the agreement and Averstar/Titan accepted the proposal.

Genesis claims that the existence of several disputes regarding facts material to the outcome preclude summary judgment. However, these asserted factual disputes are relevant only if the motion judge erred in concluding that Genesis holds any rights in the software for the benefit of Cast. We therefore focus our discussion on that issue.

c. *Constructive trust.* As we have noted, there is no genuine dispute that Billings entered into negotiations with Averstar/Titan on behalf of Cast and that ultimate purchase by Cast of the software rights was a corporate opportunity for Cast. It also is not seriously disputed that Billings did not disclose to Cast's board of directors prior to the board's approval of the arrangement that he or Genesis would have or claim an enforceable interest in the bargain.[13] "A complete failure of proof concern-

---

Law Dictionary 368 (8th ed. 2004) ("shell corporation" is "a corporation that has no active business and usu[ally] exists only in name as a vehicle for another company's business operations"). See also *Baystate Alternative Staffing, Inc.* v. *Herman,* 163 F.3d 668, 671 n.2 (1st Cir. 1998); *Nautilus Ins. Co.* v. *Reuter,* 537 F.3d 733, 737 (7th Cir. 2008). Given the posture of the case on summary judgment, we do not draw that inference against the nonmovant Genesis, nor need we do so to decide the appeal.

[11]Blais held ninety-nine percent of the stock of BlaisCo.

[12]We express no opinion on the propriety of the arrangement.

[13]In Genesis's response to the defendants' statement of undisputed facts in

ing an essential element of the non-moving party's case renders all other facts immaterial." *O'Sullivan* v. *Shaw*, 431 Mass. 201, 203 (2000), quoting from *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

The entrenched standard of behavior demanded of a director in this situation is "[n]ot honesty alone, but the punctilio of an honor the most sensitive . . . ." *Meinhard* v. *Salmon*, 249 N.Y. 458, 464 (1928) (Cardozo, C.J.). "[T]o meet a fiduciary's duty of loyalty, a director or officer who wishes to take advantage of a corporate opportunity or engage in self-dealing must first disclose material details of the venture to the corporation, and then either receive the assent of disinterested directors or shareholders, or otherwise prove that the decision is fair to the corporation. Otherwise, the officer or director acts in violation of his fiduciary duties, and whatever gain or advantage that he acquires may be held for the benefit of the corporation so as to deny him any benefit or profit." *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 532-533 (1997). "The nondisclosure of a corporate opportunity is, in itself, unfair to a corporation and a breach of fiduciary duty." *Id.* at 535. "The prohibition against self-dealing on the part of corporate fiduciaries requires that the corporation receive the full benefit of transactions in which an officer engages on the corporation's behalf, without thought to personal gain . . . ." *Geller* v. *Allied-Lyons PLC*, 42 Mass. App. Ct. 120, 122-123 (1997).

Genesis does not claim that Billings made an affirmative disclosure of his interest in the transaction to the board of Cast. Genesis argues that because the Cast directors knew the terms of the agreement as reflected in the transaction documents (which on their face gave Genesis rights to the software intended for Cast), the disinterested board members also knew that Billings could stand to benefit from the arrangement. This appears to assume that, because the deal as structured reflects a transfer to

support of their motion for summary judgment, Genesis contended "that the evidence at trial will prove that initially John Blais and BlaisCo intended that the License Fee transaction would benefit John Blais, BlaisCo and CAST and were indifferent to the tax consequences of the transaction to [Genesis]." Genesis's conclusory assertion that Billings "created an opportunity for CAST and himself" does not go to the issue whether Billings disclosed his interest in the transaction.

Genesis of the license fee rights and option to purchase, it must have been understood by the board that Genesis might actually lay claim to these interests. We disagree and conclude that Billings had to do more to satisfy his fiduciary duty to disclose to the board that he was engaging in self-dealing; he had to make an affirmative disclosure that he and Genesis might seek to claim an interest in the software in the event of a default on the licensing agreement. "Without such a rule, the fiduciary's self-interest may cloud his judgment or tempt him to overlook his duties." *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. at 532.

Genesis agrees that the purpose behind Billings's negotiations was to procure the Averstar technology for Cast; it makes no claim that, apart from inferences to be drawn from the transaction documents, the board was informed that Genesis or Billings might benefit from the arrangement. The summary judgment materials establish that Cast's disinterested board members understood that the deal to obtain the Averstar software and the license was a corporate opportunity belonging to Cast.[14] "[T]o ensure fairness to the corporation, opportunities must be presented to the corporation without regard to possible impediments, and material facts must be fully disclosed, so that the corporation may consider whether and how to address these obstacles." *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. at 532. Cf. *Durfee* v. *Durfee & Canning, Inc.*, 323 Mass. 187, 200-202 (1948) (corporation's alleged credit weakness does not allow director to exploit opportunity).[15]

"If during the existence of [a partnership or joint venture]

---

[14]One of the definitions of a corporate opportunity is " '[a]ny opportunity to engage in a business activity of which a director or senior executive becomes aware,' either in connection with performing the functions of those positions, or '[t]hrough the use of corporate information or property, if the resulting opportunity is one that the director or senior executive should reasonably be expected to believe would be of interest to the corporation' " (footnote omitted). *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. at 530, quoting from Principles of Corporate Governance § 5.05(b)(1) (1994).

[15]Nor do Genesis's summary judgment materials raise a material issue of fact regarding whether the transaction was fundamentally fair to Cast. "Th[e] 'fundamental fairness' test places the burden on the fiduciary who acquires a corporate (or partnership) opportunity, or who engages in self-dealing, 'to prove that his or her actions were intrinsically fair, and did not result in harm to the corporation or partnership.' " *Demoulas* v. *Demoulas Super Mkts., Inc.*,

one of the members of the enterprise acquired property for himself that he was under a duty to obtain for the enterprise he would hold the property on a constructive trust." *DeCotis* v. *D'Antona*, 350 Mass. 165, 168 (1966). See *Foster* v. *Hurley*, 444 Mass. 157, 167 (2005) ("Under Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched"), quoting from *Fortin* v. *Roman Catholic Bishop of Worcester*, 416 Mass. 781, 789, cert. denied, 511 U.S. 1142 (1994). The summary judgment materials establish that the corporate opportunity belonged solely to Cast; to the extent that Genesis might benefit from the arrangement, Billings failed to disclose this interest to Cast's board. These facts establish that, Billings having breached his duty to disclose any interest, neither he nor Genesis may benefit from the arrangement and therefore Genesis holds in a constructive trust for the benefit of Cast any of its interests in the software and the license agreement.[16]

*Conclusion.* For the foregoing reasons, we affirm the judgment of the Superior Court.

*So ordered.*

---

424 Mass. at 529-530, quoting from *Meehan* v. *Shaughnessy*, 404 Mass. 419, 441 (1989). Because the self-dealing nature of the transaction was not explicitly disclosed to the disinterested directors of Cast, "the burden was on [Genesis] to demonstrate that the transaction was fair to [CAST] at the time that it was entered into. [Genesis] failed to meet this burden." *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. at 538.

[16]The defendants originally requested that a "resulting" trust be imposed. The motion judge correctly ruled that on the facts of this case imposition of a constructive trust is appropriate.