Kaplan, Mitchell H., J.
This action arises out of dispute between the plaintiff, Gordon C. Graham (“Graham”), former head coach of Harvard’s women’s varsity tennis team, and the defendant, David R. Fish (“Fish”), the current head coach of Harvard’s men’s varsity tennis team. Graham and Fish are the sole shareholders of The Tennis Camps at Harvard, Inc., a Massachusetts corporation formed to conduct summer tennis camps using Harvard’s tennis facilities. In his amended complaint, Graham asserts claims against Fish for breach of contract, breach of fiduciary duty, constructive trust, and an accounting.[2] Fish’s renewed motion for summary judgment is now before the court. For the following reasons, Fish’s motion is ALLOWED.
FACTS
The following relevant facts are undisputed or viewed in the light most favorable to Graham, the non-moving party.
Harvard permits its head coaches to use Harvard’s facilities to run summer sports programs in their respective sports. Where there are male and female programs in a particular sport, the coaches share access to the facilities on an equal basis. Graham, who was hired as Harvard’s head coach for the women’s varsity tennis team in 1990, began running a tennis camp using Harvard’s tennis facilities in the summer of 1991. In 1992, Fish, head coach for Harvard’s men’s varsity tennis team, approached Graham about conducting a joint tennis camp. Graham agreed, and they began operating the camp together.
In 1998, Harvard instituted a policy requiring coaches operating summer camps at its facilities to form independent entities to contract with Harvard. Thereafter, to comply with this requirement, Graham and Fish incorporated The Tennis Camps at Harvard, Inc. (“Tennis Camps”). According to Tennis Camps’ Articles of Organization, Graham and Fish each own a fifty-percent interest in the entity; Graham is its President and Clerk, and Fish is its Treasurer. Neither Tennis Camp’s charter or by-laws provide instruction concerning what was to happen in the event that either Graham or Fish lost his position as head coach of his respective Harvard team. Attorney Dick Chute, who assisted them in incorporating Tennis Camps, suggested they enter into a separation agreement, but no such agreement was executed. The parties also never entered into any manner of non-compete agreement. From 1998 through 2007, Tennis Camps was the beneficiary of a series of one-year license agreements from Harvard for the summer use of the tennis facilities.
In January 2007, Harvard informed Graham that his contract as head coach for the women’s tennis team would not be renewed. He was given the opportunity to resign, and did so, effective June 30, 2007.[3] Graham informed Fish of his resignation in late February or early March 2007. Tennis Camps continued to operate through the summer of 2007, as it had in previous years, as Graham’s privileges to use half the Harvard tennis facilities ran through the end of that summer.
On July 1, 2007, Harvard hired Traci Green (“Green”) as the new head coach for the women’s varsiiy tennis team. As was the case with Fish and Graham, Green’s employment agreement provided her the opportunity to run summer tennis camps using Harvard’s facilities and ensured her equal access to fifty-percent of the available camp weeks or courts beginning in the summer of 2008. Green never indicated that she did not intend to make use of this opportunity.
Graham and Fish had several communications about Tennis Camps and their business relationship now that Graham was unable to contribute summer access to half of the Harvard tennis facilities, but were unable to reach an agreement. On November 1, 2007, Fish, having no interest in continuing a business relationship with Graham under these circumstances, sent Graham a notice of a special meeting of the Board of Directors for the purpose of dissolving the corporation, Graham was unable to attend, but informed Fish, through counsel, that there was no deadlock between the shareholders or other basis for dissolution.
*497 Later that month, Fish and Green formed The Tennis Academy, LLC[4] (“Academy”) to run summer tennis camps, beginning in the summer of2008, using their respective rights to access Harvard’s facilities. In March 2008, Graham’s position with the Harvard Junior Tennis Development Program ended. He executed a Revised Separation Agreement with Harvard which was dated March 27, 2008. In this separation agreement Graham agreed to be banned for one year from using, or being present at, or in the vicinity of the tennis courts at Harvard. Some time prior to the summer of2008, Graham started his own community-based tennis program, which he called Gordon Graham Tennis, LLC, for the purpose of teaching tennis to children. It opened in the summer of 2008.
In setting up Academy, Fish did not use the resources of Tennis Camps. Rather, he established a new website, created new promotional materials, and purchased new office and tennis equipment. Fish contends that he used The Tennis Camps mailing list to contact prospective campers only after Graham had already done so on numerous occasions. The court notes that whether Graham or Fish used the list first does not seem material to the resolution of the issues raised by this motion, as neither party claimed exclusive right to the mailing list.[5] Similarly, neither party claimed exclusive right to contact the employees of Tennis Camps and offer them employment at the new camps. Some Tennis Camps employees worked at the Academy and at least one went to work for Graham.
The assets of Tennis Camps at the time it ceased to operate appear to have been nominal. They included intangible assets such as its name, goodwill, and mailing list of campers; and tangible assets—mini nets and tennis balls, computer(s), and approximately $8,000 in a bank account. Neither party claims any exclusive right to any of these assets.
DISCUSSION
A.Summary Judgment Standard
Summary judgment will be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). To prevail on its summary judgment motion, the moving party must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles it to ajudgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party does not have the burden of proof at trial, as is the case here, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). “(A]ll evidentiary inferences must be resolved in favor of the [nonmoving party].” Boyd v. National R.R. Passenger Corp., 446 Mass. 540, 544 (2006).
The nonmoving party, however, cannot defeat a motion for summary judgment by merely asserting that facts are disputed. Mass.R.Civ.P. 56(e); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summary judgment the nonmoving party must “go beyond the pleadings on file, designate specific facts showing that there is a genuine issue for trial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). “Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient." Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985).
B.Claim for Breach of Contract
Graham alleges that he and Fish entered into a contractual agreement for the operation of Tennis Camps and Fish breached his obligation of good faith and fair dealing under this contract. Graham’s claim appears to conflate a claim for breach of contract and a claim for breach of the covenant of good faith and fair dealing. However, the starting point for addressing a claim for either kind of breach is whether the plaintiff and defendant were parties to a contract. In every contract there is an implied covenant that “neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-72 (1991), quoting Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385 (1976). However, the principle of Dru-ker has no application where there is no binding contract from which the covenant could be implied. Levenson v. LMI Realty Corp., 31 Mass.App.Ct. 127, 131 (1991). Graham has failed to show that an enforceable contract existed between the parties. See Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000) (“It is axiomatic that to create an enforceable contract, there must be an agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement”)[6]. At oral argument, when pressed to identify the contract that Graham and Green had entered into, Graham’s counsel could only point to their joint interests as shareholders, directors and officers of Tennis Camps. While their respective positions as equal shareholders in Tennis Camps gave rise to obligations to one another, discussed in the next section of this memorandum, that does not constitute a contract. Without a contract, Graham has no claim for breach of an implied covenant that only arises out of a contract.
C.Claim for Breach of Fiduciary Duty
Graham alleges that Fish breached his fiduciary duty to act scrupulously, in good faith, and in complete candor towards Graham. In Donahue v. Rodd *498 Electrolyte Co., 367 Mass. 578, 593 (1975), the Supreme Judicial Court described the duty that “stockholders in [a] close corporation owe one another [as] substantially the same fiduciary duly in the operation of the enterprise that partners owe to one another,” that is, “utmost good faith and loyalty” (internal citation omitted). Donahue, however, was “not intended to place a strait jacket on legitimate corporate activity.” Zimmerman v. Bogoff, 402 Mass. 650, 657 (1988). “Where the alleged wrongdoer can demonstrate a legitimate business purpose for his action, no liability will result unless the wronged shareholder succeeds in showing that the proffered legitimate objective could have been achieved through a less harmful, reasonably practicable, alternative mode of action.” Id., citing Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 851-52 (1976).
Graham alleges that Fish breached his fiduciary duly by refusing to continue to operate Tennis Camps at Harvard for half the summer, i.e., the half to which Fish had access as coach of the men’s tennis team. However, Fish was under no obligation to continue the enterprise on such a limited basis now that Graham was unable to contribute the asset that was the original basis for their business venture: access to half of the Harvard facilities during the summer. Fish, therefore, had a legitimate business purpose for not continuing Tennis Camps, which could no longer be run in the manner or scope that it had previously. Graham could provide no reasonably practicable alternative, as he could no longer contribute the right to use the Harvard facilities.[7]
Moreover, Fish and Graham had no contractual or other obligation to continue in business for any stated period of time. They were free to disassociate and run tennis camps independently, so long as neither claimed a right to use corporate assets to the exclusion of the other.
As to Fish’s decision to join forces with Green, no fiduciary duty was breached because Fish expressly told Graham that he was no longer interested in operating Tennis Camps and wished to dissolve it,[8] and did not otherwise violate his duties in the course of establishing Academy with Green. In the absence of an agreement fixing the duration of the parties’ joint venture or a covenant not to compete, Fish was free to seek dissolution and engage in a new tennis camp business. See Cain v. Cain, 3 Mass.App.Ct. 467, 478-79 (1975). “Fiduciaries may plan to compete with the entity to which they owe allegiance, ‘provided that in the course of such arrangements they [do] not otherwise act in violation of their fiduciary duties.’ ” Meehan v. Shaughnessy, 404 Mass. 419, 435 (1989), quoting Chelsea Indus. v. Gaffney, 389 Mass. 1, 10, 11-12 (1983). There is no evidence that Fish operated in some clandestine manner in setting up Academy. To the contrary, it appears that Fish was clear in stating that he chose not to continue on with Graham after Graham lost the ability to contribute access to Harvard’s facilities to Tennis Camps. Further, Graham has submitted no evidence that Fish took a corporate asset for his exclusive use or otherwise misused corporate assets in setting up Academy.[9] See Goode v. Ryan, 397 Mass. 85, 91 (1986). The right to use Harvard’s facilities for half the summer was personal to Fish as a Harvard tennis coach. It was not an asset of the corporation that could be exploited other than by Fish’s participation in a summer camp. Finally, Graham has presented no evidence that Fish played any role whatsoever in Harvard’s decision not to renew Graham’s coaching position following the 2007 season. Accordingly, Graham has failed to establish that Fish breached any fiduciary duty owed to him.
D. Request for Constructive Trust
Graham requests that any tangible or intangible assets that Fish obtained as a result of the operation of Academy by means of a breach of his. fiduciary obligations be placed in a constructive trust for Graham’s benefit. As Graham has failed to establish a claim for breach of fiduciary duty, there is no basis upon which to impose the constructive trust. Contrast Genesis Tech. & Fin., Inc. v. Cast Navigation, LLC, 74 Mass.App.Ct. 203, 212, n.15 (2009) (granting a constructive trust where corporate director failed to disclose his interest in a corporate opportunity which belonged solely to the corporation). Additionally, there is no evidence that Fish took with him any asset that had belonged to Tennis Camps.
E. Request for Accounting
Graham requests an accounting of all proceeds and assets of Tennis Camps. Generally, the right to an accounting accrues upon the termination of a partnership, see G.L.c. 108A, §43, and here Tennis Camps is a coiporation that continues to exist. Moreover, it was Graham that objected to the dissolution of Tennis Camps and the distribution of such assets as it held. But more to the point, as acknowledged by Graham’s counsel at oral argument, Graham does not claim that a dispute exists over Tennis Camp’s modest tangible assets or who has a right to them. Rather, he argues that he is entitled to some interest in the profits of Academy. That is not a claim for an accounting and not supported by any of the other claims asserted against Fish.
ORDER
For the foregoing reasons, it is hereby ordered that Fish’s motion for summary judgment be ALLOWED. Final judgment shall enter dismissing all remaining claims.

The amended complaint also contains counts for interference with contractual relations and interference with ad *499 vantageous relations. At oral argument on Fish’s motion for summary judgment, convened on April 12, 2011, Graham’s counsel waived those claims, and those counts are therefore dismissed.

Although Graham was no longer head coach, he remained at Harvard from March 2007 through March 2008 as coach for the Harvard Junior Tennis Development Program.

Originally Fish and Green used the name Tennis Camps for Life, LLC, but changed it to The Tennis Academy, LLC, on December 6, 2007.

Graham testified at deposition that he and Fish, as co-owners, had equal rights to use the mailing list of Tennis Camps.

Interestingly, Fish claims that Graham violated an agreement that the first partner who ceased working as head coach at Harvard would surrender any rights to the camps. Graham denies that there was such an agreement.

Moreover, under the terms of the Revised Separation Agreement, Graham was banned from using, or being present at, or in the vicinity of the tennis courts at Harvard until March 2009.

The fact that the corporation was not formally dissolved, evidently because Graham refused to participate in its dissolution, is not material to the court’s analysis. It is clear that Tennis Camps ceased to operate after November 2007.

Rather, it appears from the record that Graham was the one who used corporate assets for his own pecuniary interest including the name, goodwill, and mailing list.