## AMANOLLAH HOMAYOUN VAKIL *vs.* GUITI ADJAMI VAKIL.

Hampden. November 6, 2007. - January 11, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Divorce and Separation,* Amendment of pleadings, Alimony. *Husband and Wife,* Antenuptial agreement. *Contract,* Antenuptial agreement.

A probate judge erred in denying a wife's motion to amend her answer to a complaint for divorce and in declining to consider the wife's application for alimony under the terms of an antenuptial agreement (agreement), where nothing in the record suggested that the motion, in which the wife sought to clarify that she did not contest the granting of the divorce (thus avoiding application of a provision in the agreement barring alimony to the wife should she so contest), was inconsistent with the wife's strategy during the divorce proceedings; where the wife's delay in bringing the motion on the second day of trial was attributable to the judge's increasingly definitive indication that he would apply the provision barring alimony; where the risk of prejudice to the husband was minimal, in light of the time provided to take discovery and prepare for trial on the issue of alimony; and where there was sufficient evidence to enable the judge to make findings on all of the factors required in awarding alimony. [417-420]
Statement regarding the public policy concerns raised by an alimony waiver provision contained in an antenuptial agreement. [420-421]

COMPLAINT for divorce filed in the Hampden Division of the Probate and Family Court Department on August 29, 2002.

The case was heard by *David G. Sacks,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Mark T. Smith* for Amanollah Homayoun Vakil.

*Guiti Adjami Vakil,* pro se.

BOTSFORD, J. Amanollah Homayoun Vakil (husband) and Guiti Adjami Vakil (wife) have been married to each other twice and are in the process of obtaining their second divorce. One day before their second marriage in 1996, the parties executed an antenuptial agreement (antenuptial agreement, or agreement). Included in the agreement's terms is a provision that states, "[the wife]

shall not at any time make any claim or demand upon the [husband's] estate for periodic alimony, spousal support, or separate maintenance or demand to be supported by the [husband] in any manner or upon any condition if she contests directly or indirectly the granting of a divorce to the [husband]."[1] In 2002, the husband filed a complaint for divorce, alleging an irretrievable breakdown. The wife filed an answer in which she requested, inter alia, that the court dismiss the husband's complaint for divorce. After contested pretrial proceedings and a trial, a judge in the Probate and Family Court issued a judgment of divorce nisi in October, 2003. The judgment enforces some of the terms of the antenuptial agreement and, pursuant to the agreement's provision barring alimony to the wife if she contests a divorce, awards no alimony to the wife. On the wife's appeal, the Appeals Court affirmed the judgment insofar as it granted the parties' divorce, but otherwise reversed and remanded the matter to the Probate and Family Court. Vakil v. Vakil, 66 Mass. App. Ct. 526 (2006). The case is before us on the husband's application for further appellate review. We agree with the Appeals Court that the case should be remanded, largely for the reasons the Appeals Court set forth in its decision.

1. Background. The Appeals Court's decision provides a generously detailed description of the history of the parties' marital relationship, as well as of the second divorce proceedings in the Probate and Family Court. See id. at 527-535. There is no need to rehearse all of these facts again; we highlight only those background facts that bear on the issues discussed infra.

The antenuptial agreement contains two provisions regarding alimony that are relevant here. The first appears in Article III (A)(6)(d), which provides, "Nothing herein shall be construed as to prevent the [wife] from seeking an award of periodic alimony at the time of a divorce if she is then eligible for such an award of alimony." The second is found in Article III (B)(2)(a), which reads, "[The wife] shall not at any time make any claim or demand upon the [husband's] estate for periodic alimony, spousal support,

---

[1]Although there is a mutual prohibition on contesting the granting of a no-fault complaint for divorce, the agreement does not contain a parallel provision barring alimony or support to the husband if he were to contest the granting of a divorce to the wife.

or separate maintenance or demand to be supported by the [husband] in any manner or upon any condition if she contests directly or indirectly the granting of a divorce to the [husband]." The agreement also provides, inter alia, that the husband will not seek physical custody of the son; that each party will retain ownership of separately titled property; that jointly owned property will be divided equally on divorce; that the husband will name and maintain the wife as one of three equal cobeneficiaries of a $500,000 life insurance policy regardless of their marital status; that on the filing of a divorce complaint by either party, the party who does not own the marital home will vacate it forthwith; and that when the nonowner vacates the marital home in accordance with the previous clause, the husband will pay the wife $25,000.

The second marriage took place in August of 1996. The parties lived together with their minor child (a son, born in 1986) from the date of their remarriage until the spring of 2002, when the wife, alleging physical abuse and threats, obtained a protective order pursuant to G. L. c. 209A that required the husband to vacate the marital residence.[2] On August 29, 2002, the husband filed a complaint for divorce pursuant to G. L. c. 208, § 1B, alleging irretrievable breakdown. In her answer to the complaint, filed November 18, 2002, the wife denied that the marriage had suffered an irretrievable breakdown and requested that the complaint for divorce be dismissed; if the complaint were to be allowed, the wife further requested the payment of alimony, custody of the minor child, and invalidation of the agreement.

The several pretrial hearings and conferences that followed reflect quite a substantial degree of confusion about what the issues for resolution were. In particular, there appears to have been an ongoing and unresolved discussion between counsel for both parties, joined at times by the trial judge, about whether

---

[2]According to the wife, on May 10, 2002, the husband brandished a knife and threatened to kill her. The protective order she obtained immediately following this incident was extended and in effect through the time of trial. In addition, in June, 2002, the wife filed a complaint for separate support in the Probate and Family Court, and that court in July entered a temporary order granting physical custody of the minor child to the wife and directing the husband to pay child support and household expenses.

the wife was indeed contesting the granting of divorce, whether she was contesting the terms of the antenuptial agreement, and whether, if the agreement were given effect, she would be precluded by its terms from seeking alimony. On April 2, 2003, the judge entered a temporary order adopting a stipulation by the parties that the antenuptial agreement would be given full force and effect and that the wife's application for alimony would be scheduled for trial. At a pretrial conference held on April 7, 2003 (at a time originally scheduled for an evidentiary hearing on the validity of the agreement), the judge noted that the wife's answer to the complaint appeared to contest the divorce and that this raised a question as to her eligibility for alimony under the agreement. However, in a pretrial order entered on April 11, 2003, the judge listed "amount of periodic alimony" among the issues to be decided at trial.

The first day of trial took place on August 18, 2003. Although the judge refused to make a binding interpretation of the antenuptial agreement's two alimony provisions at that time, he indicated (apparently reiterating a discussion at a recent status conference) that he had "grave doubts" that the wife would be entitled to alimony under the agreement because her answer to the complaint was "still outstanding with the denial of the breakdown." At the end of the first day's testimony, the judge further indicated that he considered the wife's cross-examination regarding the husband's account of the irretrievable breakdown to be a contest to the divorce.[3]

On the second day of trial, August 19, the wife filed a motion to amend her answer to the complaint for divorce. The wife's attorney stated that the wife wished to enforce the antenuptial agreement, and that the attorney considered the wife's objection to the granting of a divorce to have been withdrawn when she stipulated to the enforcement of the antenuptial agreement. The motion thus sought to amend the pleadings to "comport with the statements made by [the wife] at the . . . hearing [i.e., pretrial conference] relative to the validity of the antenuptial

---

[3]The husband had testified on direct examination that the irretrievable breakdown of the marriage had occurred on May 11, 2002, when his wife made a "false claim" against him and obtained the protective order pursuant to G. L. c. 209A requiring him to vacate the marital residence.

agreement" so that she would not be found to have contested the granting of a divorce and thus forfeited alimony under the terms of the agreement. The parties spent the rest of that day in unsuccessful settlement negotiations. The judge heard argument on the wife's motion to amend before the next day of testimony, September 5, 2003. After hearing, he denied the motion, concluding that Mass. R. Dom. Rel. P. 15 (a)'s "directive to freely grant is inapplicable presently as justice does not so require when considerable time has passed since [the wife] filed an answer contesting the divorce, trial is substantially underway and a mistrial would be required as a cleansing of the record would require [reexamination and presentation] of plaintiff's case." The judge thereafter made clear that alimony was not at issue in the trial and appears to have amended his pretrial order to reflect that decision.

A judgment of divorce nisi entered on October 7, 2003, along with a summary of decision. Following the wife's notice of appeal, the judge also issued a memorandum of decision outlining his factual findings pursuant to G. L. c. 208, § 34. The judgment of divorce provided, in relevant part, that "the terms of the parties' antenuptial agreement control the distribution of the marital estate"; that no alimony was awarded; and that the parties would have joint legal and physical custody, with the son residing primarily with the husband. No order was made with respect to the husband's obligation under the terms of the antenuptial agreement to name the wife as a life insurance beneficiary. During the trial, the judge had ordered the wife to vacate the marital residence and the husband to pay her $6,000 in moving expenses; the judgment contained no provision reflecting the term in the agreement that required the husband to pay the wife $25,000 when the nonowner vacated the marital home.[4]

In the summary of decision, the judge explained the denial of

---

[4]The husband asserted that this money was not due, and in fact that the wife owed him compensation for his separate living expenses, because she had failed to vacate the residence "forthwith" on his filing for divorce, as set out in the agreement. The wife argued that her failure to vacate was a result of the G. L. c. 209A order requiring the husband to vacate and should not constitute a breach of the agreement. In his summary of decision, the judge appears to have agreed with the wife, although, as indicated in the text, he did not order the husband to pay her $25,000.

alimony. He interpreted the two arguably conflicting alimony provisions in the antenuptial agreement (see *supra* at 412-413) as consistent by determining that the second modified the first; that is, the wife may seek alimony "if she is then eligible," but she loses eligibility "if she contests directly or indirectly the granting of a divorce." As to the wife's motion to amend her answer, the judge stated, "[t]hrough this motion, the wife sought to change her mind about her withdrawal of her challenge to the antenuptial agreement." The judge further stated that allowing the motion would require "literally starting the trial over again with a new set of issues" and concluded that, because the wife had been advised by an attorney throughout the litigation, there was no miscarriage of justice in finding that she had waived the right to seek alimony.

At the time of trial, the wife, aged fifty-five years, was employed as a parochial school teacher, earning approximately $30,000 per year; and the husband, aged fifty-eight years, was employed as an anesthesiologist, earning approximately $234,000 per year. The judge found that "the husband had a pattern of being abusive toward the wife over the years."[5]

2. *Issues on appeal.* Before the Appeals Court, the wife argued that the antenuptial agreement was void as against public policy; that the judge had erred in denying her motion to amend her answer and her request to be relieved of her April 2, 2003, stipulation concerning the enforceability of the agreement,[6] and in thus concluding that she had waived her right to seek alimony; and that the judge had erred in failing to award her $25,000 when she vacated the marital residence. The Appeals Court agreed with the judge's interpretation of the agreement's two alimony clauses. *Vakil* v. *Vakil*, 66 Mass. App. Ct. 526, 536 (2006). It also held that the alimony waiver provision in the agreement was not "per se against public policy," quoting our

---

[5]In addition to the evidence regarding the incident that led the wife to seek a protective order against the husband in May of 2002 (see note 2, *supra*), the wife testified that the husband's physical abuse was the reason she filed for the first divorce, and the reason she moved out of the husband's home (where she and the son had been residing notwithstanding the first divorce) in 1995.

[6]The wife's lawyer had requested at the beginning of trial that she be relieved of the stipulation so that she could renew her challenge to the validity and enforceability of the agreement; the judge denied the request as untimely.

decisions in *Austin* v. *Austin*, 445 Mass. 601, 603-604 (2005), and *Osborne* v. *Osborne*, 384 Mass. 591, 598 (1981). *Id.* However, the Appeals Court found error in the judge's denial of both the motion to amend and the request to be relieved of the stipulation, and remanded the case for consideration of the validity and enforceability of the antenuptial agreement. *Id.* at 537-540.

In oral argument before us, the wife, representing herself,[7] waived all her prior challenges to the enforcement of the antenuptial agreement and, concomitantly, her claim of error in the denial of her request to be relieved of the parties' April 2, 2003, stipulation. She continues in her request to amend her answer to the complaint for divorce in order to clarify that she does not contest the granting of divorce. Once that point is established, she wishes to enforce the terms of the agreement, including the provision giving her the right to seek alimony and the provisions regarding life insurance and $25,000 on her vacating the marital residence. Thus, the principal issue before us is whether the judge erred in denying the wife's motion to amend her answer so that she could avoid application of the agreement's alimony forfeiture provision.

3. *Discussion.* As the judge correctly noted, Mass. R. Dom. Rel. P. 15 (a) provides that, after the expiration of the period during which a pleading may be amended as of right, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." We have stated that "leave should be granted unless there appears some good reason for denying the motion." *Goulet* v. *Whitin Mach. Works, Inc.*, 399 Mass. 547, 549 (1987). See *Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (construing identical language in Federal rule). Reasons that "might justify the denial of a motion to amend" include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . futility of amendment," as well as the imminence of trial. *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 290, 292

---

[7]The wife was represented by counsel throughout the divorce proceedings up to the review by this court.

(1977), quoting *Foman* v. *Davis, supra* at 182. Moreover, "[w]hile we have often upheld a judge's discretion to deny leave to amend based in part on undue delay, such denials have generally been coupled with consideration of other factors such as imminence of trial and futility of the claim sought to be added." *Sharon* v. *Newton,* 437 Mass. 99, 102 (2002). We agree with the Appeals Court that in the circumstances of this case, it was error to deny the wife's motion for leave to amend her answer.

We note that the alimony waiver provision of the antenuptial agreement is triggered only by a contest to the *granting* of a divorce, not by a challenge to the terms of the divorce, the enforcement of the agreement, or even the factual circumstances creating grounds for divorce.[8] The judge found that the alimony waiver provision had been triggered because the wife had contested the granting of a divorce both in her answer and in her cross-examination of the husband regarding the irretrievable breakdown of the marriage. On the latter point, having read the trial transcript, we disagree that the questioning by wife's counsel regarding the events of May 10 or 11, 2002 (see notes 2 and 3, *supra*), constituted an opposition to the granting of a divorce. In questioning the husband's assertion that the wife had made a "false claim" against him, counsel sought not to undermine the evidence of an irretrievable breakdown but rather to establish that the husband had physically abused the wife. Seen in this light, the line of questioning is consistent with a strategy seeking divorce and an award of alimony, because it bears on "the conduct of the parties during the marriage," one of the factors a judge must consider in fixing the amount of alimony under G. L. c. 208, § 34.[9] We find nothing in the record to suggest that the wife's strategy during trial was to contest "the *granting* of a divorce" to the husband (emphasis supplied).

---

[8]The record suggests possible confusion on the part of counsel for both parties and the judge as to the interpretation of "contest" and whether the wife could contest the *terms* of the divorce without waiving alimony. For example, counsel for the husband stated during a discussion of the waiver provision at the pretrial conference, "there's been contested hearings in this case" and during argument on the wife's motion to amend, "her entire course has been one of resistance, not compliance and acquiescence." However, the judge's summary of decision reflects the proper narrow interpretation of the clause as applying only to a contest to the fact of divorce itself.

[9]Testimony regarding the circumstances of the irretrievable breakdown is

This leaves only the wife's original pleading, denying the alleged irretrievable breakdown and requesting that the complaint for divorce be dismissed, as a bar to her eligibility for alimony. The judge denied her motion for leave to amend her answer to remove this hurdle because "considerable time has passed since [the wife] filed an answer contesting the divorce; trial is substantially underway and a mistrial would be required as a cleansing of the record would require [reexamination and presentation] of plaintiff's case."[10] It is true that nine months had passed since the wife filed her answer, and four months had passed since the pretrial conference at which the judge accepted the wife's withdrawal of her challenge to the antenuptial agreement and suggested that her original answer constituted a contest to the divorce. However, delay alone is generally not sufficient reason to deny a motion to amend. See *Goulet* v. *Whitin Mach. Works, Inc.*, 399 Mass. at 550 n.3, quoting *Cornell & Co.* v. *Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) ("prejudice to the non-moving party is the touchstone for the denial of an amendment").

In this case, the judge's pretrial order of April 11, 2003, listing the amount of alimony as an issue for trial, accounts for the timing of the motion to amend. The wife filed the motion after the first day of testimony, in response to the judge's increasingly definitive indication that he would apply the alimony waiver provision, in part because she had not amended her answer to clarify that she was not opposing the divorce. Although trial had already begun, the fact that alimony had been scheduled since April as an issue to be decided at the August trial also obviates the risk of prejudice to the husband, who had four months to take discovery and prepare for trial on that issue. Cf. *Goulet* v. *Whitin Mach. Works, Inc.*, *supra* at 550 (error to deny motion to amend complaint to add breach of warranty claim

---

also necessary to enable the judge to make the finding required by G. L. c. 208, § 1B, second par., that an irretrievable breakdown in fact exists.

[10]The judge's comment that "[t]hrough this motion, the wife sought to change her mind about her withdrawal of her challenge to the antenuptial agreement" is unsupported by the record. To the contrary, the wife filed her motion to amend only after the judge unequivocally denied her request to be relieved of the stipulation, and the wife's counsel made clear that through the motion she was seeking to escape application of its alimony waiver provision, but otherwise to enforce the agreement.

five days before trial where defendant "knew that breach of warranty was an issue"). Moreover, as the judge's memorandum of decision demonstrates, there was sufficient evidence to enable him to make findings on all of the factors that G. L. c. 208, § 34, requires a judge to consider in awarding alimony. Because the judge thus had enough information to establish an alimony award, and because this was not a jury trial, the judge's assertion that allowing the wife's amendment would have necessitated a mistrial seems dubious. Finally, as the Appeals Court pointed out, "[t]here is nothing in the record before us to suggest that in seeking to amend her answer the wife was acting in bad faith, with a dilatory motive, or to the surprise and prejudice of the husband," and, because the disparity in the parties' economic situations could well have led to an award of alimony under the statutory factors if she were eligible, "the wife's claims were far from futile." *Vakil* v. *Vakil,* 66 Mass. App. Ct. 526, 538, 539 (2006). Because the record reveals no justification for the denial of the wife's motion for leave to amend, the judge should have allowed the motion and considered the wife's application for alimony under the terms of the antenuptial agreement.[11]

A final observation is in order. In the current posture of the case, with neither party contesting the validity or enforceability of the antenuptial agreement, there is no need to undertake the two-step analysis outlined in *DeMatteo* v. *DeMatteo,* 436 Mass. 18, 26-33 (2002), and *Austin* v. *Austin,* 445 Mass. 601, 603-604 (2005). However, to the extent the Appeals Court's opinion interprets our prior decisions to mean that the alimony waiver provision in this case raises no public policy concerns, see *Vakil* v. *Vakil, supra* at 536, we do not agree. The waiver clause does raise policy concerns, both because it is one sided, imposing consequences solely on the wife for opposing a divorce sought by the husband and not the other way around, and because it discourages the parties from seeking to resolve their differences and

[11]There is no question, as the judge himself observed during the course of the divorce proceedings, that the parties, and perhaps especially the wife, were presenting a persistently confusing and often shifting set of issues and problems to the judge. We are unquestionably at an advantage, because we are able to examine the record as a whole in hindsight. But that examination convinces us that the motion to amend should have been allowed.

save the marriage. See, e.g., *Osborne* v. *Osborne*, 384 Mass. 591, 606 n.12 (1981) ("the court takes an especially dim view of any penalty clause that discourages reconciliation, as such a provision is manifestly contrary to public policy" [discussing clause in lawyer's contingent fee agreement]). Nevertheless, because the alimony waiver clause here is not only unchallenged but also inapplicable once the wife's motion to amend her answer is allowed, there is no need to consider its enforceability.

4. *Conclusion.* So much of the judgment granting the parties' divorce is affirmed. The remainder of the judgment and the order denying the wife's motion for leave to amend her answer are reversed. The matter is remanded to the Probate and Family Court for further proceedings consistent with this opinion, which are to include consideration of enforcement of the provisions of Article III(A) of the antenuptial agreement.

*So ordered.*