SULLIVAN, J.
*573 The plaintiff, Michelle Brown (Michelle), appeals from a judgment entered in favor of the defendant, Savings Bank Life Insurance Company of Massachusetts (SBLI or insurer), on the parties' cross motions for summary judgment. The plaintiff's claims brought against the insurer arose from the loss of life insurance coverage for her deceased husband, Daniel Brown (Daniel).[1] On appeal Michelle[2] concedes that her contract and contract-related claims were properly dismissed because they were time barred under the insurance policy, but maintains that the judge erred when he dismissed her tort and tort-related G. L. c. 93A claims on the merits. The insurer asserts that the judge's ruling was correct not only for the substantive reasons stated by the motion judge, but because all of Michelle's contract, tort, and statutory claims are barred by the limitations period *1166 in the policy requiring that claims "on or in respect to this policy" be filed no later than two years after her cause of action accrued. Michelle also appeals from the judge's order denying her motion to amend her complaint, and from the order denying her motion for partial summary judgment. We affirm in part and reverse in part. *574 Background. Viewed in the light most favorable to the plaintiff, see Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991), the material facts are as follows. Michelle and her husband, Daniel, purchased three life insurance policies from SBLI in 2001 and 2002. Daniel's policy, in the amount of one million dollars, named Michelle as the beneficiary.[3] All three policies contained terms that stated the annual premium for the initial ten-year term would be a level premium. At the end of the ten-year term, the premium on each policy increased significantly. In Daniel's case, the premium increased from $440 to $5,340 annually.
Daniel's policy and one of Michelle's policies reached the end of the ten-year term on November 28, 2011. Before the end of the term, employees of the insurer called the Browns' home in Hopedale regarding the increase in the policy premium applicable to each policy. The insurer, as a matter of business practice, recorded telephone calls by way of a voice-call recording system. Transcripts of several calls were included in the summary judgment record, and the content of the recorded calls is undisputed.
On August 2, 2011, SBLI sales agent Terry Melville called and left a message at the Hopedale house stating "that [Michelle's] policy is going into its eleventh year in November and the premium goes through the roof when that happens and I'm sure you won't keep that policy.... [T]here may be some options available with us so that you could continue coverage ongoing. And I'd like to speak with you about those." Michelle testified to a similar telephone call from SBLI employee David Wood during August or September (the 2011 conversation), in which they discussed the options available under both spouses' policies, although this call was not recorded.[4] According to Michelle, Wood recommended that both Michelle and Daniel purchase new policies. Melville made a third call on the date the policy term ended, November 28, 2011. In this call he left a message using *575 substantially the same language, and made reference to both Michelle's and Daniel's policies.
In deposition testimony, Wood acknowledged that it was SBLI company policy to tell an insured to keep a policy in place until a new policy issues if the new policy is a replacement policy -- that is, a policy issued before the old policy lapses. In this situation, SBLI requires the agent[5] to fill out a disclosure form approved by the *1167 Commissioner of Insurance. See generally G. L. c. 175, § 204 ; 211 Code Mass. Regs. §§ 34.00, et seq. (1995). Wood, who had been both a sales manager and a sales agent, said that it was "the practice of the sales division to make sure that everybody keeps their insurance in force while they are going through underwriting" because they could be refused, and "no insurance agent would write a new contract on any client and tell them to cancel their old policy first and then apply with us. You always want to keep the old policy, whether it's ours or somebody else's, in force while you are going through the underwriting process." He considered the failure to do so to be grounds for termination.[6]
Daniel did not pay any portion of the $5,340 premium as of November 28, 2011, nor did he apply for a new policy before the policy lapsed. The policy contained a thirty-day grace period, but this too passed without payment. On January 6, 2012, the insurer sent a notice of policy lapse to Daniel at the parties' home in Hopedale. The letter notified Daniel that he could seek to revive the policy by filling out an application for reinstatement of coverage and returning it with the overdue premium.
On January 11, 2012, Wood called the Brown home in Hopedale regarding the policies. At that juncture, Daniel and Michelle were separated (although not legally so) and Daniel had moved to their summer home in Sandwich. Wood spoke with Michelle and reiterated that the original policy premiums jumped dramatically and that is "why you didn't pay them," further stating: "I think when you saw the bill you probably said, 'This is crazy.' " When Michelle asked, "What are our options [for coverage] at this point?" Wood stated, "If you still need coverage you need to reapply for new contracts."
*576 Michelle was concerned that Daniel's policy had already lapsed and she was "nervous that Dan is not covered at all at this point." Wood's response was that if she wanted to "try to cover him now we'd have to do a reinstatement. You'd have to pay $5,340 ... [t]o reinstate that contract. But I don't think you want to do that.... Because it'd be far cheaper for him to maybe apply for a new [ten]-year plan." At no time during this conversation did Wood offer reinstatement of Daniel's policy as an option pending approval of the new policy. Although the policy provided for installment payments, Wood did not discuss with Michelle whether she could make an installment payment to maintain coverage while the new application was pending, or whether any portion of the premium (in whatever amount paid) could be refunded in the event that a new policy was issued.[7]
Michelle again expressed concern, telling Wood, "[L]ike I said I'm nervous that now we have nothing." In response, Wood explained the application process and stated that Daniel is "probably going to be without insurance probably for about [thirty] days." Michelle told Wood to send an application for a new one million dollar policy for Daniel.
The application called for a release of medical records, and contained several questions regarding medical status. Acting on Wood's instructions, Michelle told Daniel via electronic mail message (e-mail) about the application and an impending visit from a paramedic for a blood draw.[8]
*1168 Daniel complied with all requests for medical information. On March 14, 2012, Wood spoke directly to Daniel, requesting that he sign and send certain forms, and Daniel complied. Reinstatement pending approval of the new policy was *577 not mentioned.
At Wood's deposition, he acknowledged that the "only way" he could earn a commission was if Daniel purchased a new policy. Wood would not have received a commission if Daniel had continued his old policy.
On May 2, 2012, SBLI notified Daniel that his application for a new term life insurance policy was denied. Although Wood had promised Michelle that all correspondence would be sent to her as well, the letter was addressed only to Daniel at the Sandwich address. As a result, Michelle was unaware of the denial until after Daniel died on June 6, 2012. Under the policy, Daniel was permitted to seek reinstatement of the policy for up to five years after the end of the grace period for the unpaid premium, but there was no right to reinstatement of the lapsed policy once Daniel had died.
On December 4, 2012, Michelle wrote to the insurer asking for a claim form for Daniel's death benefits, stating that she did not timely receive the notice denying Daniel's application for a term life insurance policy. The insurer responded on December 10, 2012, stating that Daniel's original policy had lapsed and no new policy had issued.
After an exchange of G. L. c. 93A demand letters and responses, the complaint in this action was filed on March 20, 2015, claiming: breach of contract for failure to automatically renew the original ten-year term life insurance policy (count I); deceit (count II); negligent supervision of employee Wood (count III); and breach of G. L. c. 93A (count IV). In its motion for summary judgment, the insurer argued that Michelle's complaint was time barred because it was brought more than two years after the policy at issue had lapsed and/or the application for a new policy had been denied. The argument was based in part on the following language in the policy.
"Section 1. Policy Fundamentals.
...
"Time Limit for Filing Suit
"Any suit brought on or in respect to this policy shall be brought against us no later than two years after the date the alleged cause of action accrues, or three years if the policy was issued in Maine or Rhode Island."
In a memorandum of decision, the motion judge ruled that the contract claims were barred by the two-year statute of limitations *578 contained in the policy, and that there was no deceit, negligence, or violation of the consumer protection statute as a matter of law. The judge also denied Michelle's motion to file an amended complaint, which attempted to incorporate facts learned during discovery, to refine *1169 the legal theories in light of discovery, and to state that Michelle was suing both in her individual capacity and as personal representative of her husband's estate. Lastly, the judge denied Michelle's cross motion for partial summary judgment, which she had premised on the proposed amended complaint. This appeal ensued.
Discussion. A. The original complaint. We review a grant of summary judgment de novo, "to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.' " District Attorney for the N. Dist. v. School Comm. of Wayland, 455 Mass. 561, 566, 918 N.E.2d 796 (2009), quoting from Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. at 120, 571 N.E.2d 357. "Material facts are those that might affect the outcome of the suit under governing law." Genesis Technical & Financial, Inc. v. Cast Nav., LLC, 74 Mass. App. Ct. 203, 207, 905 N.E.2d 569 (2009).
1. Contract claims. As we have noted, the policy contained a clause which stated that "[a]ny suit brought on or in respect to this policy" must be brought within two years of accrual of the claim. Michelle acknowledged before the motion judge and on appeal that her breach of contract claim for failure to automatically renew the policy was properly dismissed. Michelle agrees that the two-year time period in the policy had already lapsed by the time suit was filed on March 20, 2015,[9] and makes no argument that the limitations period is unenforceable as to the contract claim. See G. L. c. 175, § 22 ; Creative Playthings Franchising Corp. v. Reiser, 463 Mass. 758, 760-761, 978 N.E.2d 765 (2012).[10]
2. Tort and consumer protection claims. Michelle's remaining claims were threefold: (1) SBLI agent Wood deceived and misled her and Daniel by telling her, in the 2011 conversation, to have Daniel buy a new policy without telling her to continue to pay the premium on the old policy, and by failing in January, 2012, to *579 offer the option of reinstating the old policy, once lapsed, while the application for a new policy was pending; (2) SBLI was negligent in its supervision of Wood; and (3) SBLI violated G. L. c. 93A by failing to provide mandated replacement policy notices, and/or failing to inform the Browns that the policy should be maintained or reinstated while the application was pending.
a. Statute of limitations. (i) Contractual limitations period. SBLI contends that because Michelle's suit seeks the one million dollar policy limit in damages, all of her claims are in fact disguised contract claims, and are barred by the policy's two-year statute of limitations for suits "on" the contract.
Michelle's contract claim is that SBLI breached Daniel's policy because it failed to automatically renew the policy in accordance with policy renewal provisions of the policy, set out in the margin.[11] The deceit and negligent supervision claims are based not on the contract, but on the 2011 and *1170 January and March, 2012, telephone conversations with Wood. These conversations do not form the basis of a breach of contract claim. Rather, Michelle contends that Wood failed to inform the insureds that they could and should either maintain (as in the case of the 2011 conversation) or reinstate (as in the January and March, 2012, conversations) the policy while the application for new coverage was pending. The one million dollar demand is the measure of damages, but the deceit and negligent supervision causes of action sound in tort. See, e.g., Kitner v. CTW Transp., Inc., 53 Mass. App. Ct. 741, 746, 762 N.E.2d 867 (2002).
Kitner is instructive on this point. In Kitner, a corporation induced the plaintiff, a long-haul truck driver hired as an independent contractor, to allow his liability policy to lapse upon promise of a new policy, which was not placed. The company then fired the driver for lack of insurance. Id. at 744, 762 N.E.2d 867. This court observed that the plaintiff's c. 93A claim sounded in both contract and tort. Id. at 746-747, 762 N.E.2d 867. Ultimately, the jury in Kitner rejected the plaintiff's breach of contract claim, but found for the plaintiff on *580 his negligent misrepresentation claim, a fact which this court considered dispositive in characterizing the choice of law issues and the nature of the G. L. c. 93A claim. Id. at 746-747, 762 N.E.2d 867. Similarly here, the contract, tort, and c. 93A claims can and should be considered separately. The three-year statute of limitations applies to the deceit and negligent supervision claims, and they are not time barred.
As to Michelle's G. L. c. 93A claim, the claim, as presented on summary judgment, is based explicitly on a theory of deceit or misrepresentation. It therefore is not a claim "on" the contract, and is not time barred. "An action pursuant to G. L. c. 93A is 'neither wholly tortious nor wholly contractual in nature.' " Id. at 746, 762 N.E.2d 867, quoting from Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass. App. Ct. 545, 548, 649 N.E.2d 791 (1995). Where the consumer protection claim under G. L. c. 93A is a statutory claim more closely resembling the tort of misrepresentation, it is treated as a tort. See Kitner, supra at 746-747, 762 N.E.2d 867. See also Standard Register Co., supra at 550, 649 N.E.2d 791 ("In the present case, the misrepresentations of the defendants are at the core of Standard Register's claim for a violation of G. L. c. 93A, § 11, thereby making it a chapter 93A claim which sounds in tort rather than contract"). Cf. Schwartz v. Travelers Indem. Co., 50 Mass. App. Ct. 672, 675, 677, 740 N.E.2d 1039 (2001) (applying four-year statute of limitations to a c. 93A claim where "conduct prohibited by G. L. c. 176D, and made unfair and deceptive by G. L. c. 93A, § 9, creates an action independent from the contract"). Accord Hearn v. Rickenbacker, 428 Mich. 32, 41, 400 N.W.2d 90 (1987) (actions for fraud and negligence fall outside the policy of insurance, and contract provision barring suits "on [the] policy" after one year inapplicable); Dunaway v. Allstate Ins. Co., 813 N.E.2d 376, 385, 379, 387 (Ind. Ct. App. 2004) (policy clause providing that "any suit or action must be brought within one year" inapplicable to independent tort). Contrast Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 378-379, 548 N.E.2d 182 (1990).
Alternatively, the insurer contends that the tort and consumer protection claims are barred because the policy's two-year limitations period applies to any claim either on or "in respect to this policy."
In Creative Playthings, the Supreme Judicial Court approved a contractually shortened limitations period in a franchisee's counterclaim for breach of the implied covenant of good faith and fair dealing, *1171 fraudulent inducement, and c. 93A, where "the claim arises under the contract, and the agreed-upon *581 limitations period is subject to negotiation by the parties, is not otherwise limited by controlling statute, is reasonable, is not a statute of repose, and is not contrary to public policy" (emphasis added). 463 Mass. at 761, 766, 978 N.E.2d 765. Here, in contrast, as discussed above, the deceit and deceit-based statutory claims are not claims based "on th[e] policy," do not "aris[e] from [the] contract," id. at 759, 978 N.E.2d 765, citing Albrecht v. Clifford, 436 Mass. 706, 717-718, 767 N.E.2d 42 (2002), and are not "in respect to" the policy.
Creative Playthings also counsels that statutes of limitations found in contracts of adhesion should be approached with caution. See 463 Mass. at 763, 978 N.E.2d 765 ("Any contractual reduction in a limitations period that is unreasonable or not subject to negotiation by the parties, such as in a contract of adhesion, will be unenforceable"). An insurance contract is a contract of adhesion, which must be construed against the drafter and in favor of the insured. See Boazova v. Safety Ins. Co., 462 Mass. 346, 350-351, 968 N.E.2d 385 (2012). Setting to one side the questions of public policy raised by a shortened limitations period, the "on or in respect to" language of the contract here is, at best, ambiguous.[12] See Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 670, 88 N.E.3d 1133 (2018). See also Acushnet Co. v. Beam, Inc., 92 Mass. App. Ct. 687, 695-697, 93 N.E.3d 1186 (2018) (holding the term "with respect to" in a stock purchase agreement is ambiguous). "[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it." Nutter & Co., supra at 670, 88 N.E.3d 1133, *582 quoting from Restatement (Second) of Contracts § 211 comment e (1981). The language of the policy, which refers only to "this policy," and appears under the heading "Policy Fundamentals," does not put an average member of the public on notice that independent tort and tort-based consumer protection claims must be brought within two years.
Finally, however one might construe the contract language, imposition of a contractually shortened limitations period on tort-based consumer protection claims violates public policy. Our courts have declined to enforce contractual waivers of rights under the individual consumer *1172 protection provisions of c. 93A.[13] "A statutory right or remedy may be waived when the waiver would not frustrate the public policies of the statute.... Thus, we ordinarily would not effectuate a consumer's waiver of rights under c. 93A." Canal Elec. Co., 406 Mass. at 377-378, 548 N.E.2d 182 (distinguishing between consumer and commercial c. 93A claims). See Garrity v. Conservation Commn. of Hingham, 462 Mass. 779, 787, 971 N.E.2d 748 (2012) ("[T]he critical consideration in deciding if a particular statute is reasonably interpreted to permit a waiver [of a time limitation] is whether doing so would frustrate the purposes and policies that statute is designed to advance"); Downey v. Chutehall Constr. Co., Ltd., 88 Mass. App. Ct. 795, 800-801, 42 N.E.3d 1194 (2016) (consumer's oral waiver of building code requirements not a defense to contractor's liability for violation of c. 93A).
This conclusion is underscored by the fact that in enacting a statute of limitations for consumer claims under c. 93A, the Legislature adopted progressively longer statutes of limitations. See G. L. c. 260, § 5A.
"Chapter 93A claims ... were originally subject to a two-year statute of limitations, which was extended to three years in 1973 before [G. L. c. 260,] § 5A [,] finally extended it to four years in 1975. See Baldassari v. Pub[lic] Fin. Trust, 369 Mass. 33, [43], 337 N.E.2d 701, 708 (1975).... [ Section 5A was enacted] as part of a broader legislative scheme to 'remedy the imbalance *583 which exists primarily because of a lack of parity in bargaining power between the consumer and the provider of consumer goods and services.' Mahoney v. Baldwin, 27 Mass. App. Ct. 778, [780], 543 N.E.2d 435, 437 (1989). The progressive lengthening of the statute of limitations, and the statutory language emphasizing the centrality of consumer protection, strongly suggest that the Massachusetts legislature did not intend this limitations period to be shortened by contract."
Anderson v. Comcast, Corp., 500 F.3d 66, 76 (1st Cir. 2007). For all these reasons, the phrase "in respect to" does not operate to contractually shorten the limitations period applicable to the deceit and tort-based c. 93A claims.
(ii) Other statutory limitations periods. The insurer's reliance on G. L. c. 175, § 22, is also inapposite. Section 22 provides, in pertinent part:
"No company and no officer or agent thereof shall make, issue or deliver any policy of insurance ... [which] limit[s] the time for commencing actions against it to a period of less than two years from the time when the cause of action accrues."
SBLI claims that this means that it can, and has, extended the two-year limitations period in the policy to tort and tort-based c. 93A claims.
Looking first to the "plain statutory language," see DiCarlo v. Suffolk Constr. Co., 473 Mass. 624, 629, 45 N.E.3d 571 (2016), quoting from Worcester v. College Hill Properties, LLC, 465 Mass. 134, 138, 987 N.E.2d 1236 (2013), the language "no company ... shall" is language of prohibition. On its face, G. L. c. 175, § 22, is designed to limit (not expand) the ability of insurers *1173 to shorten the time period in which to bring claims. See Taylor, The Life Insurance Law of Massachusetts, 19 B.U. L. Rev. 244, 278 (1939). This limitation was first enacted by St. 1856, c. 252, as to domestic insurance companies, and was extended by St. 1907, c. 576, § 29, to foreign insurance companies. Taylor, supra. These two Acts abrogated cases that strictly enforced much shorter contractual limitations periods against insureds and beneficiaries who sought to recover on insurance policies. See, e.g., Amesbury v. Bowditch Mut. Fire Ins. Co., 6 Gray 596, 603, 72 Mass. 596 (1856) (four months from adverse determination); Lewis v. Metropolitan Life Ins. Co., 180 Mass. 317, 62 N.E. 369 (1902) (six months from date of death). *584 Since that time, the Legislature has passed ever more comprehensive insurance regulation and consumer protection legislation. See G. L. cc. 93A, 175, 176D. As part of that system of regulation, the Legislature has chosen to expand, not contract, the time period for bringing consumer protection claims. As the Supreme Judicial Court observed in Creative Playthings, 463 Mass. at 762 n.4, 978 N.E.2d 765, G. L. c. 175, § 22, constitutes legislative approval of a two-year contractual limitations period applicable to a "claim [that] arises under the contract." Creative Playthings, 463 Mass. at 766, 978 N.E.2d 765 (emphasis added).[14] The language of G. L. c. 175, § 22, can and should be read in harmony with (not in contradiction to) G. L. c. 260, §§ 2A and 5A, by applying § 22 to contract claims, § 2A to tort claims, and § 5A to tort-based c. 93A claims. "A statute is to be interpreted with reference to the preexisting law.... If reasonably practicable, it is to be explained in conjunction with other statutes to the end that there may be an harmonious and consistent body of law." Everett v. Revere, 344 Mass. 585, 589, 183 N.E.2d 716 (1962) (quotation omitted).
Here, reading G. L. c. 260 and G. L. c. 175, § 22, in harmony, a two-year statute of limitations applies to the contract claim and any contract-based c. 93A claims arising under the policy, the four-year statute of limitations in G. L. c. 260, § 5A, applies to Michelle's tort-based consumer protection claims, and G. L. c. 260, § 2A's three-year statute of limitations is applicable to her related tort claims.
b. Merits. (i) Deceit and negligent supervision claims. The judge ruled that summary judgment was appropriate on the merits of counts II and III, the deceit and negligent supervision claims. So much of these claims as were based on replacement policy notice requirements were properly dismissed. The remainder of these claims, pertaining to the insurer's failure to advise the insureds to maintain or reinstate Daniel's policy while his application for a new policy was in process, should not have been disposed of at this juncture.
The complaint alleged the insurer was negligent in "failing to assure compliance with requirements regarding advising insureds *585 of the risks of Replacement transactions" and with the requirements of the Division of Insurance. In general, a replacement policy is one where, at a minimum, the application is initiated before the lapse of an existing life insurance policy. 211 Code Mass. Regs. § 34.02. See Mayer v. Cohen-Miles Ins. Agency, Inc., 48 Mass. App. Ct. 435, 442, 722 N.E.2d 27 (2000), distinguishing *1174 Ellis v. William Penn Life Assur. Co. of America, 124 Wash. 2d 1, 873 P.2d 1185 (1994). Daniel's "policy was neither 'existing' nor 'in force,' [ 211 Code Mass. Regs. § 34.02,] at the time of the transaction involving the [application for or] purchase of the term insurance policy. Nor did the ... policy lapse or otherwise terminate 'by reason of [the] transaction' involving the purchase of the term policy." Mayer, supra at 440, 722 N.E.2d 27. Rather, the policy lapsed for nonpayment of the premium. Moreover, Daniel did not initiate an application for a new policy until after the old policy had lapsed. Thus, the requirements pertaining to replacement policies were not applicable, and summary judgment regarding so much of counts II and III of the complaint as were based on the alleged replacement policy transactions was properly granted. See id. at 440-442, 722 N.E.2d 27.
Summary judgment should not have been granted on the remaining aspects of counts II and III. The judge's ruling was based, in part, on a misapprehension of what evidence could properly be considered. See note 8, supra. Viewed in the light most favorable to the plaintiff, and taking into account all properly considered record evidence, a fact finder would be permitted to find that Wood told Michelle to choose between continuing the old policy at a higher premium or applying for a new policy at a lower rate. According to Wood's own testimony, it was SBLI's policy to advise insureds to keep their policies in force while applying for a new one, but there is no evidence that Wood did so in the 2011 conversation with Michelle, before the policy lapsed. In January, 2012, after Daniel's policy lapsed, Michelle expressed her concern that Daniel lacked coverage and specifically asked what the options were for coverage. Wood told her that she could reinstate the policy, but presented this as an all or nothing option, and expressly advised against it. He did not inform her that she could seek reinstatement of the old policy while the new application was pending. Nor did he address whether, if reinstated, Daniel could pay a quarterly premium rather than an annual one. Nor did he discuss these options with Daniel when he spoke to *586 him in March, 2012.[15] Summary judgment should have been denied for this reason. "[E]ven in an arms-length transaction, though there may be no duty otherwise imposed, if a party does speak 'to a given point of information, voluntarily or [otherwise], he is bound to speak honestly and to divulge all the material facts bearing upon the point that lie within his [or her] knowledge. Fragmentary information may be as misleading ... as active misrepresentation, and half-truths may be as actionable as whole lies." Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc., 81 Mass. App. Ct. 282, 291-292, 962 N.E.2d 221 (2012), quoting from Kannavos v. Annino, 356 Mass. 42, 48, 247 N.E.2d 708 (1969). Cf. Glickman v. Brown, 21 Mass. App. Ct. 229, 235, 486 N.E.2d 737 (1985) ("We think it follows that sellers should not be allowed to misrepresent the truth simply because they have not made reasonable efforts to ascertain it").
The motion judge ruled as a matter of law that Michelle should have known to *1175 maintain or reinstate the coverage. This was error. In view of the evidence that Wood advised against maintaining the policy, that in the 2011 conversation, Wood failed to tell Michelle of the importance of maintaining coverage, and later, when asked, failed to disclose to her the option for reinstatement, it was for a jury to decide what inferences to draw from the evidence. Moreover, despite Wood's promise that all notices regarding Daniel's policy would be sent to Michelle, the letter declining to issue a policy was not sent to Michelle, effectively foreclosing any effort by her to reinstate Daniel's policy before his death.[16] While we express no view as to the ultimate merits of the parties' claims and defenses, the evidence, viewed in the light most favorable to Michelle, merited a jury's consideration. *587 (ii) Chapter 93A. The complaint alleged that the insurer was liable under G. L. c. 93A both for its deceit and misrepresentations, and for failure to comply with the replacement policy notice requirements set forth in 211 Code Mass. Regs. §§ 34.00 et seq. For the reasons stated above, so much of the c. 93A claim as was based on the replacement policy notice requirements was properly dismissed, but summary judgment should not have been granted on so much of the c. 93A claim as alleged deceit and misrepresentation. "[A] negligent misrepresentation of fact the truth of which is reasonably capable of ascertainment is an unfair and deceptive act or practice under G. L. c. 93A, § 2(a )." Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 62, 809 N.E.2d 1017 (2004), quoting from Golber v. BayBank Valley Trust Co., 46 Mass. App. Ct. 256, 261, 704 N.E.2d 1191 (1999). Glickman, 21 Mass App. Ct. at 235, 486 N.E.2d 737. Moreover, Michelle has offered evidence that the omissions were deliberate, because Wood stood to make a commission on a new policy but not the reinstatement of the old policy. Intentional misrepresentation also rises to the level of a c. 93A violation. See Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 239, 897 N.E.2d 82 (2008), citing Zayre Corp. v. Computer Sys. of America, Inc., 24 Mass. App. Ct. 559, 570 n.23, 511 N.E.2d 23 (1987) (conscious misrepresentation may be so seriously deceptive as to permit recovery under c. 93A, § 11, where a party gave "false assurances as to future conduct, even though the party's later actions, taken contrary to those assertions, were contractually permitted"). This aspect of the c. 93A claim should not have been dismissed.
B. The proposed amended complaint. Michelle also appeals from the order denying her motion to amend, which order was entered after the motion for summary judgment was allowed. A motion to amend should be granted unless there appears to be good reason for denying the motion, such as the futility of the proposed amendment. See Vakil v. Vakil, 450 Mass. 411, 417, 879 N.E.2d 79 (2008) ; Lipsitt v. Plaud, 466 Mass. 240, 254, 994 N.E.2d 777 (2013).[17] The denial of a motion to amend is *1176 reviewed for an abuse of discretion or error of law. See *588 Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of Harvard College, 413 Mass. 66, 72, 595 N.E.2d 316 (1992).
The motion judge undoubtedly considered the amendment futile as a result of his earlier ruling on the summary judgment motion. While futility is a proper reason for denying such a motion, see Lipsitt, supra, because the judge erred as a matter of law in granting summary judgment as to some of the claims, he also erred in part in denying the motion to amend. Cf. id. at 255, 994 N.E.2d 777 ("[B]ecause the factual allegations in [the] original complaint were sufficient to state a claim ... it follows that a fortiori, [the] amended complaint, which expands on and supplements those factual allegations, is also sufficient"). We address the viability of the amended complaint for purposes of clarity on remand.
In the amended complaint Michelle sued not only in her individual capacity, but also in her capacity as personal representative of Daniel's estate. The amended complaint dropped the breach of contract claim, but added other causes of action, including breach of the covenant of good faith and fair dealing, breach of promise, negligence, and negligent misrepresentation.
1. Individual claims. With respect to the claims brought by Michelle individually, the judge did not abuse his discretion or err as a matter of law in declining her motion to add claims for the breach of the covenant of good faith and fair dealing and breach of promise. The covenant of good faith and fair dealing is implied in every contract. Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471, 583 N.E.2d 806 (1991). Thus, these claims are contractual in nature, and they are barred by the two-year limitations period for claims on the policy. In any event, Michelle's theory that a new and binding contract of insurance was formed by virtue of Wood's January 11, 2012, telephone conversation, in which he stated that Daniel was "probably going to be without insurance probably for about [thirty] days," is infirm as a matter of law. The application for a new insurance policy was just that, an application. The record is clear that the insurer would not accept the application until Daniel fulfilled certain conditions, which he was unable to do.[18] No contract for insurance could have existed until the conditions precedent for acceptance of Daniel's offer by the *589 insurer were satisfied. See Gabbett v. Connecticut Gen. Life Ins. Co., 303 Mass. 433, 435, 21 N.E.2d 950 (1939) ; Krause v. Equitable Life Ins. Co. of Iowa, 333 Mass. 200, 203, 129 N.E.2d 617 (1955).
Turning to the tort and c. 93A claims, all claims based on the failure to provide replacement policy notice forms in violation of G. L. c. 175, § 204, and 211 Code Mass. Regs. §§ 34.00, et seq. were futile, as were claims based on an oral contract for a new policy. The remaining portions of the deceit, negligence, and tort-based consumer protection claims were viable, and amendment of the complaint to add these claims should have been allowed.
2. Personal representative claims. The merits of the claims brought by Michelle in her capacity as personal representative must be considered separately.
*1177 For the reasons stated above, the judge did not abuse his discretion in declining to allow the addition of claims based on an oral contract for a new policy, and failure to send replacement policy notices. However, the remaining claims brought by Michelle as personal representative stand on a different footing. Among the questions to be considered is which of the claims survive Daniel's death. See G. L. c. 228, § 1 ; Rockwell v. Furness, 215 Mass. 557, 102 N.E. 914 (1913) ; Kraft Power Corp. v. Merrill, 464 Mass. 145, 151-161, 981 N.E.2d 671 (2013) ; Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 178-179, 987 N.E.2d 1247 (2013). Contract claims survive Daniel's death, as do c. 93A claims based on a breach of contract theory. See Kraft Power Corp., supra at 157, 981 N.E.2d 671. The negligence and misrepresentation claims do not. See Rockwell, supra at 558-559, 102 N.E. 914. Our courts have yet to address the question whether the c. 93A claims based on negligence and misrepresentation survive. See Kraft Power Corp., supra ("We leave for another day whether claims brought under G. L. c. 93A that are not contractual nonetheless survive a party's death"); Klairmont, supra at 179, 987 N.E.2d 1247 (allowing noncontractual c. 93A claim to survive, but limiting holding to facts of case).
As to those properly pleaded claims which survive, there is the additional question whether the extended statute of limitations for suits by executors and administrators applies. See G. L. c. 260, § 10. Because these issues have not been addressed either here or in the trial court, we leave them for further consideration on remand.
Conclusion. So much of the judgment as (a) dismisses count I of the complaint and (b) dismisses so much of counts II, III, and IV as allege failure to issue a replacement policy notice, is affirmed. In all other respects, the judgment is reversed.
*590 So much of the order denying the motion to amend the complaint as pertains to (a) counts VII, VIII, IX, XI, and XII, and (b) so much of counts I, II, XIII, and XIV as allege failure to issue a replacement policy notice, is affirmed. In all other respects, the order denying the motion to amend is reversed, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.
The order denying the plaintiff's motion for partial summary judgment is affirmed.[19]
So ordered

Because Michelle and Daniel share the same surname, we refer to them by their first names.

In her original complaint, Michelle sued only in her individual capacity as beneficiary. See G. L. c. 175, § 125 (authorizing beneficiary of life insurance policy to "maintain an action ... in [her] own name"); Wright v. Vermont Life Ins. Co., 164 Mass. 302, 303, 41 N.E. 303 (1895). In the proposed amended complaint, Michelle also sues in her capacity as personal representative of Daniel's estate. See Slocum v. Metropolitan Life Ins. Co., 245 Mass. 565, 567, 139 N.E. 816 (1923). When referring to Michelle, we refer to her in her individual capacity unless otherwise noted.

Michelle had two polices totaling one million dollars naming Daniel as the beneficiary; Michelle's first policy named Daniel as the beneficiary in the amount of $300,000, and expired in November of 2011. A second policy in the amount of $700,000 terminated in May of 2012. As is discussed more fully infra, Michelle purchased a second ten-year term life insurance policy in the amount of $700,000 and named Daniel as the beneficiary.

The insurer disputes that this telephone call occurred because a review of its voice-call recording system does not show this telephone call. For purposes of summary judgment, however, we must review the evidence in the light most favorable to Michelle, and therefore accept Michelle's sworn version of the facts.

Although Wood and the parties refer to Melville and Wood as "agents," the evidence is undisputed that they were at all times employees of SBLI, and not independent agents.

Despite the emphatic nature of this testimony, Wood failed to tell Michelle to maintain her policy or to give her the notice that he described as mandatory, even though they began the process for procuring a replacement policy for her second, $700,000 policy long before it lapsed.

The policy provided for annual, semi-annual, or quarterly payments.

SBLI argued before the motion judge that the e-mail could not be properly considered because of the marital disqualification. See G. L. c. 233, § 20, First. The judge adopted this argument when ruling that there was no actionable misrepresentation as a matter of law. The fact of the communication between husband and wife is not privileged. See Sampson v. Sampson, 223 Mass. 451, 458-459, 112 N.E. 84 (1916) (wife permitted to testify that she had a conversation with husband, and as a result took certain action); Mass. G. Evid. § 504 (b)(1) & note (2018). In any event, e-mail is a written communication, and existing case law holds that written communications are not subject to the marital disqualification. Commonwealth v. Szczuka, 391 Mass. 666, 678 n.14, 464 N.E.2d 38 (1984). Thus, the e-mail is properly considered, and even in the absence of the e-mail, a finder of fact could infer from the fact of the conversation between Michelle and Wood, and Daniel's subsequent conduct that Wood's advice was relayed to him by Michelle, per Wood's instructions. For purposes of summary judgment, this inference is drawn.

The policy lapsed on November 28, 2011. The application for a new policy was rejected on May 2, 2012. Daniel died on June 6, 2012, and the claim was denied on December 10, 2012.

Michelle has not advanced any other reason outlined in Creative Playthings to set aside the contractual limitations period. See 463 Mass. at 763, 978 N.E.2d 765.

The policy provides, in pertinent part:
"Section 1. Policy Fundamentals
...
"Policy Renewal
"We will automatically renew this policy for additional one year periods. We won't require new evidence of insurability."

As any standard release of claims demonstrates, it is possible to draft clear contract language that covers contract, tort, and statutory claims. The language used in the SBLI policy ("Any suit brought on or in respect to this policy") does not, however, "plainly and definitely express" a clear meaning. Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146, 439 N.E.2d 234 (1982). The phrase "in respect to" may be a mere lawyers' redundancy, intended to underscore "on ... the policy," or it may be intended to cover other types of contract-related claims or remedies, such as claims for rescission of a policy where the insured is induced by fraudulent representations to purchase insurance. See G. L. c. 175, § 181 ; Passatempo v. McMenimen, 461 Mass. 279, 960 N.E.2d 275 (2012). "[I]n respect to" may apply to the refund of prepaid premiums in the event of death. See G. L. c. 175, § 119B. Or it may be intended to apply to claims for discrimination in the issuance of policies for any of the reasons proscribed by G. L. cc. 175 or 151B. See G. L. c. 175, §§ 120 -120F, 122 -122A ; G. L. c. 151B, § 4(3A). Or it may be intended to apply to any tort, any consumer claim, or any claim for unfair insurance practices or bad faith claims handling. See G. L. c. 176D, § 3, and G. L. c. 93A, § 9. Compare Schwartz, 50 Mass. App. Ct. at 676-677, 740 N.E.2d 1039 (notwithstanding policy provision that " 'any claim by virtue of [this] policy' ... is subject to a two-year limitation period," court held that four-year statute of limitations applied to claim for unfair settlement practices under G. L. c. 176D).

In Creative Playthings the parties were a franchisor and franchisee. The court rejected the franchisee's argument that he was entitled to the four-year limitations period applicable to c. 93A claims under G. L. c. 260, § 5A, rather than the shorter contractual limitations period, because "nothing in the record indicates that the Legislature intended to treat franchisees ... who own and operate individual stores selling goods to the public, as individual consumers." 463 Mass. at 765, 978 N.E.2d 765. This rationale certainly suggests that the court would have treated an individual consumer claim under § 9 differently.

SBLI also contends that the two-year limitations period in G. L. c. 175, § 110B, is a statute of repose which applies to the tort and c. 93A claims, thus barring any "action ... on [the] policy" where the policy has lapsed for nonpayment of premium and the action is commenced more than two years after the due date of the premium. Leaving to one side whether § 110B is a statute of repose or a statute of limitation, the suit here is not one brought "on [the] policy," see part (i), supra, and § 110B does not apply.

SBLI has not adduced evidence to show or argued that reinstatement for this period of time was foreclosed. It is unclear from the record what the reinstatement requirements were for Daniel. Wood told Michelle with respect to her lapsed policy that she had to pay the premium, but there would be no physical. The notice of lapse sent to Daniel stated that he had to make a reinstatement application, and provide evidence of insurability, but is silent as to the physical. The ambiguity in the record precludes summary judgment. The burden is on SBLI to show that there is no dispute of material fact, and that burden has not been met at this juncture. See Khalsa v. Sovereign Bank, N.A., 88 Mass. App. Ct. 824, 828-829, 44 N.E.3d 863 (2016).

Both parties make a number of subsidiary arguments regarding the viability of claims of misrepresentation, deceit, or negligence with respect to each of the statements made by Wood. Looking at the entire course of conduct and all of the statements as a whole, we are not persuaded that these claims should be dismissed on the basis that Wood engaged in no more than expressions of mere opinion.

For the reasons stated in Vakil, supra, we reject the insurer's argument that the motion to amend was untimely. "[D]elay alone is generally not sufficient reason to deny a motion to amend." 450 Mass. at 419, 879 N.E.2d 79. "[P]rejudice to the nonmoving party is the touchstone for the denial of an amendment." Ibid., quoting from Goulet v. Whitin Mach. Works, Inc., 399 Mass. 547, 550 n.3, 506 N.E.2d 95 (1987). Here the plaintiff sought to amend the complaint to reflect evidence adduced during discovery. The defendant has not demonstrated prejudice.

The application form and e-mail correspondence stated that Daniel was obligated to meet with the paramedic, provide a blood sample and medical records, and undergo vetting by underwriting. For example, the e-mail requesting a "paramed exam" describes it as "the first important step in securing coverage."

We express no opinion as to the merits of the plaintiff's motion, and affirm the denial of the motion if for no other reason than that it was premature, as it was premised on the proposed amended complaint, which had not been allowed.